FIRST NATIONAL BANK OF HARDIN, RESPONDENT, *v.* HERGERT ET AL., DEFENDANTS; LABBITT, APPELLANT.

(No. 7,039.)

(Submitted April 7, 1933. Decided April 27, 1933.)

[22 Pac. (2d) 169.]

*Mr. Franklin D. Tanner,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Guinn & Maddox,* for Respondent, submitted a brief; Mr. C. C. Quinn argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by L. H. Labbitt from a decree of foreclosure of a chattel mortgage, executed to the First National Bank of Hardin by William Hergert, on personal property owned by Labbitt at the time of trial, subject to the mortgage.

In 1930, William Hergert, a sugar-beet raiser of Big Horn county, on lands belonging to another, was without funds for the production of a crop and had mortgaged his live stock, machinery, equipment and prospective crop for the season, to Labbitt. In April, 1930, in consideration of the agreement of

the bank to finance the production of the season's crop, without restriction as to the amount to be furnished up to November 15, Labbitt gave to the bank a written waiver of his lien and permitted the bank to take a mortgage from Hergert on all of the property covered by his mortgage. The mortgage to the bank was given as security for the payment of a $200 note, then executed, and advances to the extent of $1,600. During the spring and summer, as he needed money, Hergert executed notes to the bank in amounts varying from $25 to $872. The beet checks went to the bank, and, after applying all receipts therefrom, at the end of the season the bank claimed a balance due from Hergert. Hergert kept no account, and in January, 1931, admitted the correctness of that kept by the bank, and executed and delivered a note for the balance due, secured by a second mortgage on his prospective 1931 crop.

In July, 1931, the bank commenced action; filed its complaint stating three causes of action, for $84.20, with interest and $15 as attorneys' fees on the April note for $200; $160 with interest and $25 attorneys' fees on the September note for $400; and $162.15 with interest and attorneys' fees on a note given in October, and for the foreclosure of the chattel mortgage given in April. It made Hergert, Labbitt, and one J. F. Sullens defendants, alleging that the defendants Labbitt and Sullens claimed some interest in the property mortgaged, but that their claims were subservient to that of the plaintiff. Hergert and Sullens defaulted. Labbitt filed an answer in which he pleaded payment in full of the first note; denied that the plaintiff was the owner and holder of the $400 note, and denied that it was secured by the mortgage in suit; denied that the third note was secured by the mortgage or came within the terms of the waiver.

The cause was tried to the court sitting with a jury, but, after the evidence was in, the court discharged the jury and disposed of the case as one in equity, by first entering a default judgment against Hergert for the full amount claimed in each cause of action and then making findings of fact and

conclusions of law respecting the rights of the plaintiff as against the defendant Labbitt. Sullens faded from the picture, as he was merely in possession of the mortgaged property through Labbitt, who had taken title thereto subject to the bank's mortgage.

The court found that the third note, for $162.15, was given for the purpose of settling a grocery account contracted in 1929, and was not, therefore, covered by the mortgage and waiver, but that the first and second notes were secured by the mortgage, and that the plaintiff was entitled to foreclosure and sale of the mortgaged property. The court decreed foreclosure, and that, ''if within ten days from this date the defendant Labbitt shall pay to the plaintiff the sum of $361.10, with costs, then no order of sale shall issue, and the plaintiff's lien against the property mortgaged will be exhausted, and the defendant, Labbitt, will be the absolute owner thereof.''

Labbitt has appealed; he assigns error on the court's refusal to make tendered findings; on the findings made; the entry of judgment and decree of foreclosure—all of which raise the question of the sufficiency of the evidence to warrant the findings and decree, and on the court's action in discharging the jury.

The contention that Hergert's indebtedness to the bank was paid in full is based upon the apparent showing, from the books of the bank, that the net receipts from the beet crop were more than sufficient to cover all advances made to Hergert.

Hergert testified that, after the entire matter was closed, he was advised by O. E. Anderson, cashier of the bank, that all indebtedness had been paid and there remained to his credit a balance of $15, which was thereupon paid to him by Anderson. The witness was, however, contradicted by Anderson, who denied that he had such a conversation with Hergert, and explained the apparent discrepancy in the bank figures by testifying that, in addition to the entries made in the

books, the bank paid the International Harvester Company, with Labbitt's consent, $377.05 for the use of trucks in hauling the beets, and paid Mexican beet laborers' wages, which items swelled the Hergert indebtedness to an amount slightly in excess of that in suit.

The main controversy is over the $400 note, but the attack made upon it is not so much on the ground that it was not owned and held by the bank, but rather that it is void for lack of consideration. Based on the fact that the bank-books show no credit to Hergert on the date of the note, defendant Labbitt contends that it was given for prospective advances which were not thereafter made.

Cashier Anderson had little independent recollection as to what transpired at the time the note was given; he did, however, testify positively that, in one manner or another, Hergert received the amount of each note. The explanation of this transaction, manifestly accepted by the court and concerning which there is sufficient substantial evidence to warrant the implied findings to support the decree, is as follows:

The Hardin Mercantile Company refused to extend credit to Hergert under the original financing arrangement, with which it was evidently dissatisfied because of the unpaid balance on the 1929 account. Frank Kopriva, manager, took the matter up with Anderson, the cashier of the bank, and they went to Labbitt. Kopriva first demanded that Labbitt give his note for the amount of the 1929 account and a sufficient additional amount to cover the estimated needs for 1930. As a result of this conference, the 1929 account was eliminated and the bank took Hergert's note for $400 and a second mortgage on his crop for 1930, and thereupon "guaranteed" the payment of the 1930 grocery bill. On cross-examination Kopriva was asked "Out of what?" and replied, "Out of the funds that Mr. Hergert would receive from his sugar beet crop." On this guaranty the mercantile company charged all bills of goods delivered to Hergert or his Mexican laborers to "The First National Bank of Hardin, by William Hergert."

Counsel for Labbitt asserts that "the bank's only guaranty" was that the amount would be paid from the receipts from the sale of the beet crop and, as that fund was exhausted, there is "no liability to the Hardin Mercantile Company by the bank for the payment" of the balance due, and that the company "was not justified in charging such accounts to the bank." While these assertions are not developed by argument, and no authorities are cited, presumably the position is taken that the agreement was merely that the bank would pay the account in the event the receipts from the sale of beets would be sufficient to cover all indebtedness incurred by Hergert for the season, and that the promise was to answer for the debt of another, to whom the goods should have been charged; consequently within the statute of frauds and unenforceable. (See section 10613, Rev. Codes 1921.) However, the manner in which the note was taken renders this position untenable. Anderson testified that the note was taken pursuant to the original financing agreement and was secured by the original mortgage and waiver, and that he took the second mortgage mentioned as an "additional security" because the original estimated advance was about exhausted. It is manifest that all parties concerned understood that the bank was obligated to pay the grocery bills, regardless of the amount received from the sale of beets or the amount of Hergert's other indebtedness. The evidence as a whole warrants the implied finding that the promise of the bank was such as to justify the mercantile company in looking to the bank alone for payment and charging the goods sold to it.

A "guaranty" is a promise to answer for the debt, default or miscarriage of another (sec. 8171, Rev. Codes 1921), which, under the statute of frauds, must usually be in writing (sec. 10613, Id.), but, when such a promise is made by one who has received property of another upon an undertaking to apply it pursuant to the promise, or where a creditor parts with value in consideration of the obligation in respect to which the promise is made, under circumstances such as to render the party making the promise the principal debtor, the debt be-

comes the original obligation of the promisor, and need not be in writing. (Sec. 8175, Id.)

Under the justified findings, the mercantile company account is the "original obligation" of the bank (*McGowan Com. Co. v. Midland C. & L. Co.*, 41 Mont. 211, 108 Pac. 655; *Fergus County Hardware Co.* v. *Crowley*, 57 Mont. 340, 188 Pac. 374); therefore, the bank, being liable for the balance due on the account, is entitled to exhaust the security given for the note executed pursuant to the bank's agreement to become so liable, and, under the original Labbitt waiver, this security takes precedence over Labbitt's title to the mortgaged property.

As to the action of the court in dismissing the jury, on the law phase of the case, the debtor did not question his liability and fact questions arising on the trial between the plaintiff and this appealing defendant were important only as bearing upon the question of the priority of the mortgage, on which the plaintiff was seeking a foreclosure, over Labbitt's rights which remained notwithstanding his waiver. This question was a proper subject of equity jurisdiction. (11 C. J. 661.) The jurisdiction of equity cannot be taken away in a foreclosure action by raising law questions by way of defense (*Clark* v. *Baker*, 6 Mont. 153, 9 Pac. 911; *Rochester* v. *Bennett*, 74 Mont. 293, 240 Pac. 384; *Bice* v. *Daffern*, 88 Mont. 479, 293 Pac. 433), and a court, having taken equity jurisdiction of a controversy between parties, will render judgment in relation to all matters growing out of the controversy (*Maloney* v. *King*, 30 Mont. 414, 76 Pac. 939). The determination, therefore, as to whether or not the court would receive an advisory verdict, or advisory findings of a jury, was solely for the court, and no error was committed in discharging the jury.

No reversible error having been shown, the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Hearing denied June 1, 1933.