# MERCHANTS FIRE ASSURANCE CORPORATION OF NEW YORK, RESPONDENT, *v.* WATSON, APPELLANT.

(No. 7,591.)

(Submitted January 6, 1937. Decided January 25, 1937.)

[64 Pac. (2d) 617.]

(1)

*Mr. C. E. Baker* and *Mr. E. K. Cheadle,* for Appellant, sub-
mitted a brief; *Mr. Baker* argued the cause orally.

4

*Mr. H. Leonard DeKalb*, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to recover on a promissory note given for the premiums on five hail insurance policies issued by the

plaintiff to the defendant to insure a crop of wheat growing on 560 acres of land in Judith Basin and Fergus counties on five separate but adjoining tracts, one policy being issued for each tract. The note was duly secured by a lien on the crop insured in accordance with the provisions of sections 8359–8365, Revised Codes.

The complaint in the action alleges all essential matters necessary to foreclose the lien and recover on the note, and sets out a copy of the lien, by Exhibit A, attached to and made a part of the complaint, such exhibit showing that the lien was duly filed in Fergus county as required by statute.

Defendant's demurrer to the complaint was overruled and thereafter an answer was filed denying the material allegations of the complaint, and setting up six "separate and further defenses," but referred to in the arguments as a counterclaim. In each such defense it is alleged that the growing crops of wheat on the various tracts of land were injured by a hail-storm on the 5th day of August, 1933; that on the 7th day of August following the defendant notified the local agent at Lewistown, Montana, of the loss, and that such agent communicated with the general agent of the plaintiff at Billings, Montana; and that on the 11th day of August, 1933, the local agent of the plaintiff and the adjuster from Billings made a personal inspection of such loss. It is then alleged that, when the adjuster and local agent first called at the farm of the defendant, the adjuster informed the defendant that nothing could be done with reference to an adjustment of the damage sustained by the defendant until the fields of grain had been inspected; that thereafter such fields were inspected by the adjuster and the local agent, acting together, and in company with the defendant; that after such inspection defendant was not advised that he would be required to make further proof of loss, and, by reason thereof, further performance of the terms of the agreement by the defendant as to loss, as provided by the policies, was waived by the plaintiff. It is then alleged that the various crops growing on the different tracts were damaged to the extent of 35 per cent.

as to some tracts, and 50 per cent. as to others. Defendant further alleges that he has performed all the conditions of the five agreements or policies of insurance as provided in such policies, and prays that plaintiff's action be dismissed and that defendant be decreed the sum of $1,300, with interest thereon, together with his costs and disbursements, as compensation under such policies for the damages to the crops suffered from such hail-storm.

Plaintiff's reply denies all the material allegations of the affirmative defenses, and alleges that the local agent of the plaintiff and its adjuster from Billings inspected the growing crops and found that no loss had been sustained, and that after the crops had been inspected in company with the defendant, the plaintiff prepared, and defendant executed and delivered to such adjuster, five separate statements in writing constituting a full and complete release of plaintiff, wherein and whereby defendant agreed that there was no loss or liability incurred under any of the policies of hail insurance by reason of the hail-storm of August 5. A like reply is made to each of the separate affirmative defenses set up by the defendant.

Thereafter plaintiff filed a supplemental complaint in which it is alleged that, the pleadings in the matter having developed the issues involved, the court fixed April 10, 1934, for the trial of the action, and that thereafter defendant's attorney requested a continuance until April 14, 1934, which was agreed to by the attorneys for the plaintiff; that defendant's attorney requested plaintiff's attorneys to present to him the written documents containing the agreements entered into by defendant releasing plaintiff from all liability, referred to in plaintiff's reply, and that thereupon the attorneys for plaintiff did deliver such written documents to defendant's attorney Stewart McConochie, who, after examining the same, suggested that he wished to retain such document until after a conference with the defendant which he expected would take place on April 13, the day preceding the day set for the hearing, to which counsel for plaintiff assented; that in the afternoon

of April 13, counsel for defendant advised counsel for plaintiff that he had just concluded a conference with his client, the defendant, and that defendant would appear at the office of counsel for plaintiff in a few minutes to make settlement of and "pay the note sued upon with interest," etc.; that within less than half an hour defendant appeared at the office of counsel for plaintiff and stated that he had been advised by his attorney to make payment of plaintiff's cause of action, whereupon the amount of the note, a reasonable attorney's fee, the interest upon the note and costs were computed, except that the witness fee of the adjuster and his mileage to and from Billings were excluded, and the total amount so computed and found to be due was the sum of $646.44; that defendant then stated that the only source from which he could obtain the money to settle was through the sale of the wheat in the elevator at Kolin, upon which the plaintiff had filed and was claiming a lien, as set out in plaintiff's original complaint; that defendant then left the office of counsel for plaintiff with the understanding that he would return before the hour of 5 o'clock and make arrangements for the sale of the wheat; that defendant did not so return, but that some time later the same evening arrangements were made by which O. W. Belden, of counsel for plaintiff, would meet defendant at Kolin at about 9 o'clock the following morning, when and where the wheat would be sold and settlement made by payment of the amount heretofore mentioned, the note canceled and delivered to defendant, the satisfaction of the lien filed and praecipe of dismissal of plaintiff's action also delivered to defendant; that O. W. Belden met the defendant at Kolin in the office of the Montana Elevator Company, as agreed upon, and that Mr. Belden authorized the local agent of the elevator that such elevator might purchase the grain covered by the lien and make settlement with plaintiff for the sum of $646.44; that such arrangement was consummated, one check made to the order of defendant and Belden & DeKalb for $520, and another for approximately $200, and out of the latter check defendant was to pay plaintiff $126.44 to make up the amount

heretofore mentioned of $646.44, both checks being delivered by the elevator to the defendant; that defendant then decided, before turning over the proceeds of such wheat as represented by the checks, that he wished to exhibit the release of the lien and the praecipe for the dismissal, or copies thereof to his attorney in Lewistown in order to have their legality passed upon by such attorney; that to such arrangement Mr. Belden assented, and it was the understanding that defendant would go to Lewistown, get the approval of his attorney, and that upon such approval defendant would indorse and deliver the checks to plaintiff's attorneys in accordance with the arrangements mentioned; that defendant exhibited the various papers to his attorney and was advised by such attorney that they were legally sufficient, but that defendant then advised the plaintiff's attorneys that he would not turn over and deliver the checks or indorse them as agreed upon or consummate the settlement, and that he had hired another attorney with the intention of "fighting" the case. It is further alleged that plaintiff is placed in a position of prejudice by the refusal of the defendant to make settlement as agreed upon; that the wheat upon which the lien was held was sold and thereupon passed to a bona fide purchaser for value; that the time consumed in making the sale of the wheat and securing the approval of defendant's attorney to the various papers carried the matter beyond the time set for trial, namely, April 14, 1934; that plaintiff is ready to deliver the canceled note, release the lien and dismiss the action upon defendant's complying with the terms of such settlement. Plaintiff prays that "the court investigate the facts set forth in the allegations" and enter judgment for the plaintiff for the amount prayed for and order the delivery and indorsement of the checks in accordance with the agreement, and that plaintiff be allowed further interest on the obligation, reasonable attorneys' fees and further costs in such amount as may be incurred, and for such other and further relief as is agreeable to equity.

The supplemental complaint was filed April 28, 1934; the demurrer of the defendant thereto was filed May 9, 1934, over-

ruled by the court and the defendant given twenty days in which to answer. Thereafter defendant filed his answer to the supplemental complaint, alleging in substance that he went to the office of Belden & DeKalb, plaintiff's attorneys; that the arrangement and understanding alleged in the supplemental complaint were made and had, except that there was no agreement for unconditional dismissal of plaintiff's cause of action as alleged, and alleges to the contrary that his attorney advised him that he could pay the note upon which the original complaint was founded and still reserve his right to litigate the issues presented by his counterclaim pleaded in answer to plaintiff's original complaint, and that defendant in his conversation with Belden and DeKalb on April 13, 1934, informed such attorneys that he had been so advised and that he reserved the right to litigate such counterclaim; that it was there agreed that the note described in the original complaint should be paid and settled provided it could be done in a manner whereby the defendant could have the issues presented by his counterclaim litigated and that the arrangement to sell the wheat and pay the note was made with such understanding, and none other. Defendant admits that the check for $520 made payable to defendant and Belden & DeKalb represented the proceeds of the wheat sold on April 13, 1934, upon which plaintiff had a lien, but that the additional wheat sold was wheat upon which the plaintiff had no lien or claim; admits that he refused to indorse or turn over to the plaintiff's attorneys the checks received in payment for the wheat sold for the reason that he then learned for the first time that the arrangement prepared by the plaintiff's attorneys did not reserve the right to litigate the issue presented by his counterclaim and plaintiff's reply thereto, and that he refused to deliver and indorse such checks for such reason, and no other; and that defendant at all times since the 14th day of April, 1934, had been willing to pay and discharge the note described in plaintiff's complaint if defendant could do so without dismissing and settling the issues presented by his counterclaim. Plaintiff, in reply to such answer, denies any reservations were

made in regard to the settlement agreed upon, and further denies that the check for $520 represented the proceeds of all the wheat upon which plaintiff claimed a lien.

The matter came on for hearing on October 18, 1935, with the Honorable Wm. L. Ford sitting without a jury. At the beginning of the hearing, and after argument by counsel, the court held the action was one in equity and denied the right of trial by jury. At the beginning of the hearing counsel for the defendant moved the court to require the plaintiff to elect upon which cause of action the plaintiff would proceed, which motion was denied. Witnesses were sworn and examined on behalf of both parties, and thereafter the court made its findings of fact to the effect that a settlement was agreed upon and arranged and the sale of wheat made substantially as alleged in plaintiff's supplemental complaint; that the amount agreed upon on April 13, 1934, between the defendant and the attorneys for plaintiff was $646.44, but that defendant declined to consummate such arrangement by the indorsement and delivery of the checks; that the defendant by his actions and conduct caused plaintiff to forego and waive its lien upon the wheat and consent to the sale thereof, and thereby placed plaintiff in a condition of disadvantage and embarrassment in its cause of action, and made necessary the further pleading and supplemental complaint. The court found that the defendant did not in the arrangements agreed upon reserve the right to litigate his counterclaim for the hail losses as presented by his answer to the original complaint, and further found that all the allegations of plaintiff's complaint and of its supplemental complaint are true.

Conclusions of law were made in accordance with the facts as found by the court, and judgment was made and entered in the sum of $646.44, with interest at the rate of 6 per cent. from April 14, 1934, and for plaintiff's costs and disbursements accrued since such date; and defendant was required by the decree to indorse and deliver to plaintiff's attorneys the check for $520, and to indorse the other check and hand the same to the clerk of the court to be cashed and a further pay-

ment of $126.44 made to the attorneys for the plaintiff, and, in addition, interest on the total amount found due by the judgment, with plaintiff's costs and disbursements subsequent to April 13, 1934, in the sum of $62.85, and that the remainder of the second check, if any, be delivered to the defendant. From that judgment the defendant appeals.

Defendant assigns ten specifications of error, all of which revolve around, and are founded upon his contention that plaintiff's supplemental pleadings attempt to show accord and satisfaction; that they do show accord but not satisfaction, and the assignments will be dealt with from that standpoint.

The whole controversy is over defendant's contention that his right to litigate his counterclaim was reserved by the agreement made April 13, 1934. Counsel for defendant contend that the supplemental complaint is drafted upon the theory that an accord and satisfaction had been effected, and cite a number of authorities to the effect that there was in fact an accord but no satisfaction, and that such a situation gave rise to a question of fact which the defendant had a right to have tried by a jury. Counsel for the plaintiff contends that there is no question of an accord and satisfaction in the case, and that no attempt was made to plead an accord and satisfaction by the supplemental complaint, and that decisions on such accord and satisfaction are entirely foreign to this controversy. Counsel for defendant say in their brief: "It seems to be respondent's position that the original controversy has been fully settled, and that the only matter in controversy now is the matter presented in its supplemental complaint. It is the contention of appellant that no settlement or novation has been effected. In this state the only method of arriving at a compromise and settlement is by statutory accord and satisfaction. * * * Appellant contends that the allegations in the supplemental complaint fail to state a cause of action upon an accord and satisfaction." Counsel then proceed at some length to cite authorities and argue as to what constitutes accord and satisfaction to show that the plaintiff pleaded accord by its supplemental complaint but "discloses on its face that no

satisfaction had been effected." *Barbarich* v. *Chicago, Milwaukee etc. Ry. Co.*, 92 Mont. 1, 9 Pac. (2d) 797, is cited and quoted from to support such contention, as follows: "Respondent has pleaded merely an accord, and its supplemental complaint discloses upon its face that no satisfaction was had. 'We are forced to the inevitable conclusion that the evidence shows an accord without satisfaction, which did not extinguish the original cause of action.'" Defendant further contends: "Conceding, for the purpose of argument, that respondent's supplemental complaint was sufficient to set up an accord and satisfaction, then the matters set forth in respondent's original complaint were concluded. The alleged facts set forth in the supplemental complaint state an entirely new cause of action. This new action is not an action for the foreclosure of a lien. It is not an action in equity, and appellant was entitled to a jury trial."

We think the theory and argument of counsel for defendant, revealed by this line of reasoning, tend to confuse rather than to clarify the issues, and are without merit. The action was begun to foreclose the lien as security for a promissory note. The action was correctly held to be a suit in equity by the trial court. Issues of law brought into the suit by the subsequent pleadings did not deprive the court of its equitable jurisdiction.

The supplemental complaint was made necessary by defendant's actions subsequent to the filing of the original complaint, and the two pleadings are to be taken as one. The supplement is merely an addition to the original. A supplemental complaint is authorized by section 9181, Revised Codes, and the statute was considered in the case of *National Bank of Montana* v. *Bingham*, 83 Mont. 21, 269 Pac. 162. (See, also, *California Farm & Fruit Co.* v. *Schiappa-Pietra*, 161 Cal. 732, 91 Pac. 593.)

On the question of a right of trial by jury it is a well-settled principle that when a court of equity takes jurisdiction of a controversy its jurisdiction is full and complete, and it may render final judgment in relation to all matters

involved in and growing out of that controversy. (*Grosfield v. Johnson*, 98 Mont. 412, 39 Pac. (2d) 660; *Finch* v. *Kent*, 24 Mont. 268, 61 Pac. 653; *Montana Ore Purchasing Co.* v. *Boston & Montana Con. C. & S. Min. Co.*, 27 Mont. 288, 70 Pac. 1114; *Davidson* v. *Davidson*, 52 Mont. 441, 158 Pac. 680; *In re Valley Center Drain District*, 64 Mont. 545, 211 Pac. 218; *Bull* v. *Butte Electric Ry. Co.*, 69 Mont. 529, 223 Pac. 514; *State* v. *Mercier*, 70 Mont. 333, 225 Pac. 802.)

It is also generally held that where a statute creating a lien provides no method for its enforcement, a suit in equity is the proper remedy therefor. (21 C. J. 118; 37 C. J. 342; *Silver Bow County* v. *Strumbaugh*, 9 Mont. 81, 22 Pac. 453; *Greil Bros.* v. *City of Montgomery*, 182 Ala. 291, 62 So. 692, Ann. Cas. 1915D, 738.) The statute providing for a lien to secure the premiums on policies to protect growing crops in this state (secs. 8359–8365, Rev. Codes) provides no mode for enforcing the lien granted therein, and equity jurisdiction necessarily follows.

It is also held that a legal defense does not divest equity of jurisdiction. (35 C. J. 175, sec. 54; *Clark* v. *Baker*, 6 Mont. 153, 9 Pac. 911; *First National Bank* v. *Hergert*, 94 Mont. 197, 22 Pac. (2d) 169.) And it is generally held that cross-complaints and counterclaims presenting legal issues do not deprive a court of equity of jurisdiction. (*Dover Lumber Co.* v. *Case*, 31 Idaho, 276, 170 Pac. 108; *Brush* v. *Boyer*, 104 Kan. 168, 178 Pac. 445; *Young* v. *Vail*, 29 N. M. 324, 222 Pac. 912, 34 A. L. R. 980.)

Section 23, Article III of our Constitution, guaranteeing the right of trial by jury applies to cases where right of trial by jury existed at the time of the adoption of the Constitution; the right did not exist in equity suits before such adoption and does not exist now. (*Montana Ore Purchasing Co.* v. *Boston & Montana Con. C. & S. Min. Co.*, supra, and many other cases cited.) In the *Montana Ore Purchasing Case* Mr. Chief Justice Brantly, speaking for the court, said: "Now, there is nothing in the Constitution mani-

festing the intention to extend the right to a jury trial to cases wherein it did not theretofore exist.''

We find no error in the record and the judgment is affirmed.

Associate Justices Stewart and Anderson concur.

Mr. Justice Angstman, Dissenting: I think the court erred in not granting to the defendant the right to have the cause tried by a jury. When the case was called for trial all of the equitable issues in the case stood admitted. The only controverted issues were those relating to the counterclaim. The counterclaim was obviously one presenting facts in an action at law rather than in equity. An identical case is that of *Lehman* v. *Coulter*, 40 N. D. 177, 168 N. W. 724, where the court said: ''Where one brings an action to foreclose a chattel mortgage, and the answer admits all the allegations of the complaint, all of the equity matters in such case are disposed of, and there is nothing before the court further to be considered in such equity proceedings; and where the answer, in addition to admitting all the allegations of the complaint in such equity proceeding, pleads two counterclaims for specific amounts for the recovery of money only, and at the time of the trial defendant demands a jury trial, such jury trial cannot be denied to him, and he is entitled to such jury trial as a matter of strict legal right.'' This language was quoted with approval by this court in *Benson-Stabeck Co.* v. *Farmers' Elevator Co.*, 66 Mont. 395, 214 Pac. 600. Other cases of like import are also cited and quoted from with approval in the *Benson-Stabeck Case* and need not be repeated here.

The defendant's right to a trial by jury, I think, was guaranteed to him by section 23, Article III, of the Constitution, and expressly conferred by section 9327, Revised Codes. (Compare, also, *Solberg* v. *Sunburst Oil & Gas Co.*, 70 Mont. 177, 225 Pac. 612.)

It cannot be said that there was no issue to be tried by a jury. At the trial evidence was introduced to support the counterclaim on its merits. The evidence was in sharp con-

flict. The court, however, instead of passing upon the merits thereof, expressly found that the allegation in the answer to the supplemental complaint, to the effect that the defendant reserved the right to litigate the counterclaim, was not true. Defendant's evidence on this point was vague and indefinite, but he maintained that he made no agreement regarding the settlement at all. It should be said, moreover, that he testified that he did not read the instruments pleaded in plaintiff's reply as releases under each policy, but that an instrument was read to him by an agent of plaintiff purporting to be a nonwaiver by plaintiff of timely proof of loss, and that these were the instruments that he thought he was signing.

Both parties contend here that the settlement agreement pleaded in the supplemental complaint did not amount to an accord and satisfaction. The question is argued at length in the brief of defendant because of the belief on the part of defendant's counsel that the court by its findings and conclusions so treated it. If it is treated as an accord and satisfaction, it still presents issues in an action at law and not in equity, and defendant in that event also would be entitled to a jury trial. (1 C. J. 583.)

I think the judgment should be reversed and the cause remanded for a new trial before the court sitting with a jury.

MR. CHIEF JUSTICE SANDS: I dissent from the opinion prepared by Justice Morris and concurred in by Justices Stewart and Anderson. I concur in the dissenting opinion of Justice Angstman and extend my objections to the majority opinion upon the further grounds, as follows:

This is an action in which the plaintiff first sued to recover upon six promissory notes given as the premium payment on six policies of hail insurance upon the crops then growing on six quarter-sections of land in Fergus county. The defendant answered admitting the execution of the notes but interposed a counterclaim on the six policies for damages from hail on all six of the quarter-sections described. After the case was set down for trial the parties negotiated for settlement and as a

result of such negotiations the plaintiff, by a supplemental complaint, alleged that the controversy was settled by such agreement by the defendant waiving all claim for hail loss and his agreement to immediately pay the notes in full, with attorneys' fees and costs, but that the defendant after consummating the agreement (claimed to be an accord) then refused to satisfy the claim as agreed to under such accord. The original controversy therefore rested upon the promissory notes. The accord issue later injected rested upon the question of whether an agreement of the defendant to pay the notes was made under the negotiations mentioned. There were, therefore, two issues for the recovery of one original debt,—the suit on the notes and the issue on the accord.

The important feature of the case rests upon the manner of trial. The law provides that the payment of hail insurance premium notes may be protected by a lien upon the crops issued, consisting of a notice filed with the county clerk by the insurance company. The plaintiff sought to enforce this lien in the suit and claimed that thereby the action assumed an equitable character, and therefore it was an equity action, and because of its equitable character a jury could be requested by either party, but granted by the trial court, or refused, as it might elect. The defendant, whom we will hereafter designate as "the farmer" to more clearly identify him, demanded a jury, but such demand was refused by the trial court. This refusal constituted a legal error, in my opinion, and raises an issue the principle of which is of very great importance not in this case alone but in the general practice of courts in this state.

In the earliest days of the English people from whom we derive our fundamental principles of law, a jury consisted of the neighbors of the parties in court. The more they knew of the matters in issue the better. The procedure gradually changed, until today jurymen uninformed as to the facts are the only competent jurymen. The rigors of law courts and the frequent injustice of the technicalities and fine distinctions made in law courts, together with the inability of law

courts frequently to completely administer justice, resulted in the establishment of courts of equity. The distinction between equity courts and law courts is frequently very difficult and technical. In adopting our federal Constitution 150 years ago the difference between equity courts and law courts was recognized and kept distinct (Art. III, sec. 2, Fed. Const.), and remains so distinct to this day, although, as said before, it is often very difficult to determine whether a suit is one in law or in equity. However, when the Montana Constitution was adopted, 100 years later, our section 28 of Article VIII used this definite language: ''There shall be but *one* form of civil action and law and equity may be administered in the same action.'' In section 23 of Article III of the state Constitution we find: ''The right of trial by jury shall be secured *to all* and remain inviolate, but in *all civil cases* and in all criminal cases not amounting to felony, on default of appearance or by consent of the parties expressed in such manner as the law may prescribe a trial by jury may be waived.'' It would seem to every reasonable citizen, therefore, that the right of trial by jury has been preserved in all cases, whether in law or in equity, where a question of fact is in issue in a case. By other provisions in the Constitution all questions of law are reserved to the judge, and the jury must conform to his directions concerning the law involved in that particular case.

In this case the plaintiff, a corporation organized under the laws of New York, insisted that the foreclosure of the hail lien constituted an action in equity and, therefore, it was an action commenced in equity and must be so continued and be tried according to the rules of procedure in equity cases; that is to say, by the court without a jury. Notwithstanding the further fact that this corporation plaintiff claimed under an accord and satisfaction, which all agree is a law action, the court exercising its prerogative, decided that the cause was commenced in equity and it was not bound to grant a jury trial, and it declined to impanel a jury to try this case. The court's decision in this respect is in direct conflict with the case of *Benson-Stabeck Co.* v. *Farmers', etc.,* 66 Mont. 395,

214 Pac. 600, cited in the able dissenting opinion of Mr. Justice Angstman herein. In other words, the court held that where there are both equity and law principles involved, the equity principle should not determine the character of the action—particularly not where the equitable feature was comparatively insignificant—so far as to authorize trial without a jury. I insist that the distinction between equity and law having been abrogated by the Constitution in the two sections above quoted, that instrument thereby provided for a jury in *all cases where a question of fact* is in issue; this case, being one of fact, it must be tried by a jury if demanded. This principle is of very far reaching importance. As said before, the federal courts hold that in every equity case tried in federal courts it is optional with the court to grant a jury when demanded. I do not find any fault with that holding of law by the federal courts under the federal Constitution. I do claim, however, that the two provisions mentioned in our Constitution completely reverse the situation as to the courts of Montana.

This case emphasizes the important difference in viewpoint of the majority and the minority of this court. All of the controverted issues in this case are questions of fact. The equitable features of the lien of the hail insurance company involve no controversy. The farmer claims that while the insurance policies were in effect a hail-storm destroyed his crops to the extent of from 35 to 50 per cent. He was supported in that estimate by the testimony of several of his neighbors, some of whom were also insured and who sustained hail losses from the same storm. The farmer testified that the adjuster who came to view this farmer's losses admitted that on some of the quarter-sections there was at least a 50 per cent. loss. This admission, however, was denied by the adjuster. The farmer testified that he talked of settlement of the case and the payment of the notes but proposed to reserve his counterclaim, that is, the right to later sue on the policies for his losses. This also was denied by the company. This question of reserved right to sue on the counterclaim was decided

by the court in favor of the company, notwithstanding the farmer was to get nothing for signing away his right to sue for losses. The amount of the loss was not determined by the court; it held it was all settled by the accord. From a careful reading of the testimony it seems to me very probable that a jury would have reached a very different conclusion from that reached by the judge. However, my argument is not directed to the question whether the judge was right or wrong in his findings of fact, but instead, whether he had the authority to determine these facts in the face of a demand for a jury.

In this day we hear much complaint about the usurpation of authority by courts. This instance illustrates very forcibly one class of cases, and a very numerous class; it is where courts have in my opinion very unjustly and unlawfully enlarged their authority. Moreover, as I said before, the distinction between law and equity is very difficult and courts have, by construing the doubt in favor of equity procedure, enlarged the number and class to a very unreasonable extent of cases in which they may deny a jury. Moreover, modern legislatures by providing for many involuntary liens, as in this instance, have unwittingly encouraged courts to enlarge the scope of equitable procedure, and thereby in many cases unintentionally authorized (under present court holdings) the denial of jury trials in very many cases with the prospect of much growth in that direction.

I believe the error of the continued distinction between law and equity courts arose from the early practice of the federal courts in this Territory, and the failure of our supreme court to appreciate the later effort of the progressive thinking men who prepared our state Constitution, in an effort to set aside this ancient distinction by our above-quoted constitutional provision (sec. 23, Art. VIII) in uniting the two procedures—law and equity—and by the further error of predominating the equity provisions over the law provision, and thereby encouraging in effect the making of a rule that "where there are both equity and law questions involved, the judge has the option to allow or deny a trial by jury." If this construc-

tion was again to be considered by an impartial modern court, I feel confident the modern interpretation would set aside the precedent of forty years ago and now follow the clear and fair intent of our Constitution makers in eradicating the distinction between law actions and equity actions. A proceeding involving procedure of our district courts established forty years ago, if clearly wrong, should not be longer recognized, and I appeal to the lawyers, jurists and the thinking public of the state to give this matter careful consideration and see if now is not the proper time to override the precedent that practically displaces our jury system in favor of a usurped and unwarranted court dominance. Definitely stated, I propose that in all cases where issues of both law and equity are presented in the same case, the issue of facts in the law division must, if demanded by either party, be tried by a jury, and the issues of fact in the equity division should also be tried by a jury unless good cause appears for refusal. This restriction on the power of courts will be vigorously opposed in some quarters, and in particular by corporations, especially foreign corporations. They avoid jury trials whenever possible. They take great interest in the selection of judges and rely greatly upon their decisions, which is in itself a strong reason for restricting the power of courts.

As said before, these usurped powers of courts in limiting the right to jury trials are subject to amendment by the courts themselves without further legislation, but the state legislature is not without power to act in the matter. *Congress* may make only such laws as are directly or impliedly authorized by the federal Constitution; on the contrary, our *state legislature* may make any laws not prohibited by our state Constitution. Certainly, there is no state constitutional prohibition against defining when jury trials may be demanded. A legislative Act requiring jury trials in cases as above defined would be very salutary and effective. It would not deprive any litigant of any present right or of any property. It would only modify court procedure.

I repeat my dissent to the majority decision for the reasons stated and invite the legislature to investigate this proposed reform of court procedure.

Rehearing denied February 6, 1937.