GEORGE LITTLE, Plaintiff and Respondent, *v.* JOSEPH
MACKEL, Defendant and Appellant.

No. 11384.
Submitted June 6, 1968.
Decided July 24, 1968.
443 P.2d 891.

Wade Dahood and Conde F. Mackay, argued, Anaconda, for appellant.

Chester L. Jones, argued, Virginia City, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal results from a judgment of the district court of the fifth judicial district, the Honorable Philip C. Duncan sitting without a jury.

Certain procedural matters must be set forth in order to understand the appellant's issue of error. This case went to trial on the amended complaint of respondent which sought specific performance of the option provision of a lease and option agreement between respondent and appellant. The answer and cross-complaint of appellant originally filed claimed (1) no proper claim was stated; (2) the option was unenforceable because it was represented to the defendant to be effective only upon his (defendant's) death; and (3) failure of consideration. The cross-complaint alleged purported fraudulent representations concerning the effectiveness of the option and seeks damages for such fraud. To this document was appended a demand for a jury trial.

The respondent moved to dismiss the answer and cross-complaint on the grounds of failure to state a claim for relief. Respondent also moved to strike the demand for a jury trial. The court struck from the cross-complaint the allegations referring to punishment by means of punitive damages and the demand for a jury trial.

The case went before the court, after the court's order, as a case of specific performance with the defense that the fraud of plaintiff (respondent) had brought about the inclusion of an incomplete option provision in the lease and option agreement. It should be noted that no objection was made to the court's orders on the pleadings, except to the denial of jury trial.

The sole issue before this Court is whether or not the trial court was correct in its ruling denying appellant's request for a jury trial.

The facts of this case are simple. The respondent, George Little, and his wife became acquainted with Joe Mackel, the appellant, shortly after the end of World War II. The Littles had been raised on a farm in Arkansas and had come to Montana to do farm work. Mr. Little had a seventh grade education. Joe Mackel owned a small ranch of 1,020 acres which came to him by inheritance from his parents; it had been in the family for some 50 years. Over the years the ranch had supported a cattle herd of from 50 to 100 head. Joe Mackel had lived some 50 years on the ranch and had attended school through the first year of high school. The Littles worked on a ranch adjoining the Mackel ranch and had become friends of Joe. After his parents' death, Joe hired the Littles to work for him which resulted in a strong friendship between the parties. In 1953 Joe leased the ranch to the Littles, who after some six months had to give up the lease due to a health condition of Mrs. Little, but there was no difficulty arising from this fact. When Joe Mackel learned of the Littles' problem, he voluntarily cancelled the lease and re-leased to another party. The Littles moved to Butte; Joe Mackel found work in that area and their friendship continued. In 1955 or 1956, Joe drew a will leaving the ranch property to the Littles. In 1959, when the lease ran out, Joe Mackel talked the Littles into returning to the ranch on a lease-option. At that time he was dissatisfied with the prior tenants who had let the property run down and expressed a desire to the Littles to have someone on the ranch who would look after it.

The 1959 lease, for a period of 10 years, covered the 1,020 acres of land, plus 45 head of cows and 2 bulls. The lease also contained an option to purchase the real property for $25,000. The respondent Littles testified that the option to purchase was his idea and the only discussion he had with Mackel was.

over the amount. He, Little, wanted it for $20,000 and Mackel wanted $25,000, which amount was put in to the lease. The rental was for one-third share of the increase of the livestock to the lessor.

The 1959 lease remained in full force and effect until 1964, at which time Mackel sold the cattle necessitating a reconsideration of rental payments. The testimony reveals that during this period, from 1959 to 1964, Joe Mackel became enamored with a woman whose fiscal demands caused a considerable decrease in his bank account bringing about the necessity to dispose of the cattle. Perhaps because of this rather costly affair, the friendship of the Littles and Mackel cooled.

At the time of the sale of the cattle in 1964, the parties to the lease discussed a new rental arrangement and Little went to an attorney who made a new lease; it contained two variations, one concerned the maintenance of certain old buildings, the other the rental which was set at $1,000 per year. Little took this lease to Galen, Montana, where the terms of the lease were gone over item by item between the two men and the lease was then signed by Mackel.

Sometime in 1964 or 1965, the respondent Little learned that the appellant wanted to sell the ranch so he made financial arrangements to borrow the needed money and in 1965 gave the appellant notice that he was exercising the option to purchase. When the appellant refused to sell, this action was commenced. The appellant alleged he was tricked into the option to purchase for $25,000, that the ranch was worth more than that figure. On cross-examination the following testimony occurred:

"Q. Really, Joe, your only basic objection to going through with the option is that it just isn't enough money at today's prices, isn't that it? A. Yes."

With this procedural and fact background we will consider the one issue before us, the court's failure to give Mackel a jury trial.

This action is one of specific performance and is one that our Court handles under its equitable jurisdiction. It has long been recognized that specific performance of a contract is a matter of equitable cognizance. This Court held, in In re Bank's Estate, 80 Mont. 159, 260 P. 128, that "The power to enforce specific performance of a contract is vested solely in courts having equitable jurisdiction; the remedy is purely equitable, as, at common law, the only remedy available to a party injured by a breach of contract was an action for damages."

On the question of a jury trial for such equitable actions this Court has held: "It is well settled by the decisions of this court that in equity cases the judge may call a jury to his assistance if he chooses, but is not bound to do so. If he does, he is not bound by the findings, but may reject them in whole or in part and make findings of his own. Therefore he is not required to submit the whole case to the jury, but only such issues of fact as he may choose. Whether he adopts the one course or the other, the ultimate result is to be regarded as emanating from the judge, and its correctness is to be determined by a review of his action, and not that of the jury by the standard of counsel's judgment as to what the jury ought to have been required to find." Yellowstone National Bank v. McCullough et al., 51 Mont. 590, 154 P. 919. See also Moore v. Capitol Gas Corporation, 117 Mont. 148, 158 P.2d 302; Waite v. Waite, 143 Mont. 248, 389 P.2d 181.

Even here, where the appellant's defense of *fraud vel non* is raised and the contention made that this is a legal defense, we find no jury trial is required for this Court held, in Merchants Fire Assur. Corp. of New York v. Watson, 104 Mont. 1, 64 P.2d 617, that "On the question of a right of trial by jury, it is a well-settled principle that when a court of equity takes jurisdiction of a controversy its jurisdiction is full and complete, and it may render final judgment in relation to all matters involved in and growing out of that controversy. * * *

426

"It is also held that a legal defense does not divest equity of jurisdiction. 35 C.J.175, § 54; Clark v. Baker, 6 Mont. 153, 9 P. 911; First National Bank [of Hardin] v. Hergert, 94 Mont. 197, 22 P.(2d) 169. And it is generally held that cross-complaints and counterclaims presenting legal issues do not deprive a court of equity jurisdiction." See also Butler Brothers Development Co. v. Butler, 111 Mont. 329, 108 P.2d 1041; Thisted v. Country Club Tower Corp., 146 Mont. 87, 405 P.2d 432.

The trial court ruling being correct, its judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and CASTLES, concur.