No. 81-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

ROBERT F. DOWNS,

Plaintiff and Respondent,

vs.

BERNARD SMYK, a/k/a BERNARD L. SMYK,
and LOIS A. SMYK,

Defendants and Appellants.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Charles Luedke, Judge presiding

Counsel of Record:

For Appellants:

Gregory Jackson, Helena, Montana
Douglas B. Kelly, Helena, Montana
Bernard Smyk, Pro Se, Billings, Montana

For Respondent:

Calton & Hamman, Billings, Montana

Submitted on briefs: June 21, 1982

Decided: September 23, 1982

Filed: SEP 23 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Smyk appeals from summary judgment in the Thirteenth Judicial District Court, Yellowstone County, in this action arising out of a written agreement between the parties. The agreement (June 1976 agreement) provided that Downs would advance money for the downpayment in the purchase of certain real property in Billings. This action arose when Downs and Smyk were unable to agree about the meaning and implementation of the terms of the June 1976 agreement.

We reverse the District Court in part, affirm in part, and remand for trial.

Defendant Smyk presents the following issues to this Court:

(1) Whether the District Court acted within its authority in granting a remedy allowing Downs exclusive control over the contractual arrangements for the property for a period of one year.

(2) Whether the District Court erred in ruling that defendant was not entitled to a jury trial.

(3) Whether the District Court erred by granting summary judgment.

Smyk filed appellant's brief acting pro se. Thereafter, he hired an attorney, who authored the appellant's reply brief. Respondent Downs moves this Court to strike the reply brief as being "an entirely new second Appellant's brief" that raised new issues, some of which were not before the District Court, others of which were raised in neither the appellant's brief nor the respondent's brief.

Traditionally this Court has accorded some procedural leeway to litigants proceeding pro se. This "leeway" does not extend to allowing them to raise issues which are not

properly before this Court, and to disadvantage their opponents by raising new matters in their reply briefs. Rule 23(c), M.R.App.Civ.P. states that ". . .[t]he reply brief must be confined to new matter raised in the brief of the respondent." Our consideration of Smyk's arguments, therefore, will be limited to the above issues, which we find to be properly before this Court.

In March of 1976, the owner of a 7 1/2 acre parcel of land in Billings offered Smyk a 120-day option to purchase the property for $300,000 with $60,000 down. Smyk had leased the land during the previous several years for his used-equipment business, and desired to purchase it, but was unable to raise $60,000 for the downpayment. In June of 1976, Smyk and Downs entered into an agreement, whereby Downs would advance Smyk the downpayment and receive certain benefits, including a 50% interest in the property. Rental income was to be placed in a separate account for the benefit of the parties. The agreement also provided:

> "Downs will control any contractual arrange-
> ments until Smyk has contributed by payment
> of the monthly installments, the sum of
> $60,000.00. At that time, Downs and Smyk
> shall equally share all liabilities and
> profits, if any."

In July of 1976, Smyk entered into a contract for deed with the trustee for the property and made the downpayment with the $60,000 advanced by Downs. Smyk continued to occupy and use the property as his place of business but ceased to make rental payments for such use.

In fall of 1977, prior to the equalization of contributions, and therefore, during the period when Downs possessed authority to "control any contractual arrangements," Downs was offered $500,000 for the property. The offeror, Hammons, apparently was willing to pay any penalty resulting from the sale, as

-3-

well as to cover acceleration of payments on the contract for deed, if acceleration resulted from the sale. Downs drew up a negotiated initial agreement providing for Smyk's approval and the approval of the trustee for the original owner (Carlson Trust) as required under the contract for deed signed in July of 1976. Downs claims he sought Smyk's approval of the sale, but Smyk refused to agree to sell the property. Smyk equalized his contribution with Downs' on February 10, 1978.

On February 27, 1978, Downs filed suit in the District Court seeking specific performance of the June 1976 agreement, or, in the alternative, partition, and an accounting and payment of rentals. An amended complaint was filed in August of 1978 seeking to quiet title to Downs' one-half interest, partition, an accounting and payment of income due, and seeking a declaratory judgment as to Downs' right to control sale of the property.

Following the taking of depositions of the parties, Downs filed a motion for summary judgment pursuant to Rule 56, M.R.Civ.P., on August 23, 1978, on the ground that there was no genuine issue as to any material fact. After briefing on the motion, the District Court granted summary judgment on February 13, 1979, on Downs' claim to quiet title and his claim seeking an accounting and payment of rental and income due. Judgment was entered on February 23, 1979, decreeing that Downs owned an undivided 50% of the property under the agreement and that Smyk must account to Downs for rental and other income derived through the use of the property. The District Court denied Downs' requests for partition of the property and for "continual control of the contractual arrangements."

Smyk appealed, and this Court affirmed the decision of the District Court, finding that summary judgment was appropriate and that under the June 1976 agreement, Downs' advance of the downpayment of $60,000 gave him a 50% interest in the property. See Downs v. Smyk (1979), ____ Mont. ____, 604 P.2d 307, 36 St.Rep. 2300. Smyk's petition for rehearing, based in his assertion that he was denied his right to trial by jury, was denied.

Downs next moved the District Court for summary judgment entitling him to control contractual arrangements with regard to property for one year or, in the alternative, for partition of the property. He also moved the court to compel discovery relative to the accounting. Smyk continued to demand a jury trial, so Downs also moved for a declaration that Smyk was not entitled to a jury trial in this action. By order dated August 11, 1981, the District Court granted Downs' motion to strike Smyk's demand for a jury trial and granted summary judgment for Downs granting Downs exclusive control of the contractual arrangements in relation to the land for a period of one year. The ruling on the motion to compel discovery was withheld, because defendants were acting in a cooperative manner. Smyk appeals.

I.

Smyk argues that, because the remedy granted Downs was not identical to Downs' rights under the June 1976 agreement, the remedy was not specific performance, and was not within the authority of the court to grant. Smyk maintains that because there was no provision in the agreement allowing Downs one year to control contractual arrangements, the District Court could not grant "specific performance" which included that provision. Then Smyk argues that since Downs failed to make contractual arrangements for the sale of the property before Smyk contributed $60,000, he forever lost

-5-

his right to do so.

We do not agree. The effect of the remedy was to return the parties to the status quo at the time Downs claimed Smyk refused to agree to the sale of the property, then to require Smyk to specifically perform. Admittedly, the creation of one year as a reasonable time to retain that status quo, is somewhat artificial, but it is hardly a fatal flaw in the judgment. In Link v. State By and Through Department of Fish and Game (1979), 180 Mont. 469, 591 P.2d 214, this Court found that the Fish and Game Commission had breached its agreement with park concessionaires Link, to maintain and operate a "mountain railroad" at Lewis and Clark Caverns. The Commission had obtained the railroad from Links, but had eventually abandoned it. This Court found that the District Court properly required both maintenance and repair of the railway and return of the re-established and repaired railway to the concessionaires. We stated:

> "The only just, reasonable and feasible solution was to compel specific performance and return the Links to the position they were in at the time the March 1950 contract was entered into, where the Links could run the railroad and the visiting public would again be served with transportation facilities to the mouth of the cave." Link, 180 Mont. at 482, 591 P.2d at 222.

This Court's rationale in Link, 180 Mont. at 482, 591 P.2d at 222, follows:

> "In a specific performance case, the District Court sits as a court of equity and it is empowered to determine questions involved in the case and to do complete justice. Hames v. City of Polson (1950), 123 Mont. 469, 477, 215 P.2d 950, 955.

> "'The plaintiffs may not in equity insist upon the performance of the terms of the lease and at the same time prevent the performance thereof. One who prevents the performance of the terms of a contract cannot avail himself of the nonperformance which he himself prevents. (Citations omitted).' Fey v. A.A. Oil Corp. (1955), 129 Mont. 300, 319, 285 P.2d 578, 588."

We are unwilling to state that Smyk breached the June 1976 agreement, or even that the terms of the agreement necessarily granted Downs the authority to decide to sell as well as to control contractual arrangements. Those matters must be determined upon remand to the District Court for trial. (See Issue III.) We only state that, if such a right existed in Downs, and its exercise was prevented by Smyk, it was within the power of the trial court to restore the parties to the status quo before specifically enforcing the agreement. Nor do we find that the period of one year for Downs to control is unreasonable; the negotiation of the sale of a good-sized parcel of valuable real estate might well take a year.

In short, we hold that the District Court acted within its authority in structuring the remedy it did.

## II.

Smyk contends that he was denied his constitutional right to trial by jury on all issues raised in his case. He relies upon the Montana Constitution, Article II, section 26, which states:

> "The right of trial by jury is secured to all and shall remain inviolate. . ."

and Rule 38(a), M.R.Civ.P., which provides:

> "The right of trial by jury as declared by the Constitution of the State of Montana or as given by a statute of the state of Montana shall be preserved to the parties inviolate."

The right of trial by jury is guaranteed in virtually identical language in both the 1889 and the 1972 Montana Constitutions. The note following the guarantee in the 1972 Constitution states:

> "For decisions relating to similar provisions in the 1889 Constitution, see annotations following sec. 23, Art. III of the 1889 Constitution. . ."

The position of this Court in the matter of right to jury trial in equity cases under the 1889 Constitution was clearly set forth in Little v. Mackel (1968), 151 Mont. 421, 425, 443 P.2d 891, 893-894:

> "This action is one of specific performance and is one that our Court handles under its equitable jurisdiction. It has long been recognized that specific performance of a contract is a matter of equitable cognizance. This Court held, in In re Bank's Estate, 80 Mont. 159, 260 P. 128, that 'The power to enforce specific performance of a contract is vested solely in courts having equitable jurisdiction; the remedy is purely equitable, as, at common law, the only remedy available to a party injured by a breach of contract was an action for damages.'

> "On the question of a jury trial for such equitable actions this Court has held: 'It is well settled by the decisions of this court that in equity cases the judge may call a jury to his assistance if he chooses, but is not bound to do so. If he does, he is not bound by the findings, but may reject them in whole or in part and make findings of his own. Therefore he is not required to submit the whole case to the jury, but only such issues of fact as he may choose. Whether he adopts the one course or the other, the ultimate result is to be regarded as emanating from the judge, and its correctness is to be determined by a review of his action, and not that of the jury by the standard of counsel's judgment as to what the jury ought to have been required to find. (citations omitted.)"

The transcript of the 1971-72 Montana Constitutional Convention (Transcript) indicates that the only changes in the 1889 Constitutional guarantee of right of trial by jury involved criminal causes; except for those changes, the transcript states: "The remainder of the section is proposed without change." Transcript, Vol. II, p. 642. Finally, Delegate Holland did in fact move specifically to extend jury trial rights to equitable actions, by rephrasing the guarantee to read: "The right of trial by jury shall, in all cases in law and equity, be secured to all. . ." The motion failed. Transcript, Vol. V, p. 1792.

It is evident to this Court that the 1972 Montana Constitution does not extend the right of trial by jury to equitable actions, and that the rule articulated in Little, supra, is applicable here.

Smyk's reliance upon Rule 38(a), M.R.Civ.P., is also misplaced, as Rule 39 clearly indicates the right stated in Rule 38(a) is not absolute. Rule 39(a) refers to the court's authority to find "that a right of trial by jury of some or all of those issues does not exist," "those issues" being the issues as to which jury trial is demanded. Rule 39(c) refers to actions "not triable of right by a jury." The rules do not indicate which actions and issues do not carry a right to jury trial. Early case law, which is still viable, together with the transcript of the 1972 Constitutional Convention, has filled that gap, and firmly establishes that the right to trial by jury does not attach to cases in equity. Smyk has no constitutional right to demand a jury trial in this cause.

Smyk also argues that the remedy granted by the District Court went beyond specific performance, and thus was not an equitable remedy. We have concluded, infra, that the District Court acted within its authority in granting specific performance in the manner it did. The remedy, like the action, remains an equitable one.

Smyk argues that he was entitled to have a jury make factual determinations concerning the accounting and payment to Downs of rental income from the property. As Downs correctly points out:

> "[T]he issue is improperly raised. The accounting was ordered by the District Court in the Order dated February 13, 1977, granting partial summary judgment. Smyk appealed that Order but made no objection to the Court's ordered accounting. He cannot now raise this issue on a second appeal."

Furthermore, in 1981, Downs sought only to have the Court compel discovery, claiming that Smyk refused to surrender to Downs information crucial to the accounting. There was no real factual issue, and, as the order of August 11, 1981, reflects, Smyk had cooperated with Downs' demands for discovery, and there was no present need to rule on Downs' motion to compel discovery. There is no merit in this argument.

The District Court properly ruled that Smyk was not entitled to trial by jury as a matter of right.

### III.

The final and determinative issue before this Court is whether summary judgment was appropriate. Smyk addresses this issue in his reply brief in response to two arguments in Downs' respondent's brief. See M.R.App.Civ.P., Rule 23(c). Downs states: (1) "It is uncontested that Downs had obtained a ready and willing buyer before Smyk's contribution had equalled Downs', but Smyk refused to sell." (2) "The intent of the parties at the time the contract was entered into was that Downs would have control over contractual arrangements with regard to the property until such time as Smyk's contribution equalled Downs'. Downs attempted to exercise that right but Smyk wrongfully refused to sell the property to a third party."

Smyk now argues that the record before the District Court clearly indicated his position: (1) that the intent of the parties in granting Downs temporary control over contractual arrangements did not include granting him the right to determine that the property would be sold; (2) that Downs never presented Smyk with a concrete offer he could either accept or reject. Smyk maintains that these unsettled factual questions should have precluded summary judgment. We agree.

-10-

> "Under Rule 56(c), M.R.Civ.P., a summary
> judgment is proper only if the record dis-
> closes no genuine issue of material fact
> and that the movant is entitled to judg-
> ment as a matter of law.  Reaves v. Rein-
> bold (1980), Mont., 615 P.2d 896, 37 St.
> Rep. 1500; Rumph v. Dale Edwards, Inc.
> (1979), Mont., 600 P.2d 163, 36 St.Rep.
> 1022.  The party moving for summary judg-
> ment has the burden of showing the complete
> absence of any genuine issue as to all
> facts which are deemed material in light of
> those substantive principles which entitle
> him to a judgment as a matter of law.  Big
> Man v. State (1981), Mont., 626 P.2d 235,
> 38 St.Rep. 362; Harland v. Anderson (1976),
> 169 Mont. 447, 548 P.2d 613.  Once the
> movant has established that no material
> issues of fact exist, the burden shifts to
> the opposing party to raise an issue of
> fact."  Krone v. McCann (1982), ____ Mont.
> ____, 638 P.2d 397, 399-400, 39 St.Rep. 10,
> 13.

> "It is well established in Montana that all
> reasonable inferences that may be drawn from
> the offered proof are to be drawn in favor
> of the party who opposes summary judgment.
> Reaves v. Reinbold (1980), Mont., 615 P.2d
> 896, 37 St.Rep. 1500, and cases cited there-
> in."  Brown v. Merrill Lynch, Pierce, Fenner
> & Smith, Inc. (1982), ____ Mont. ____, 640
> P.2d 453, 457, 39 St.Rep. 305, 309-310.

In considering a motion for summary judgment, the court is
to look at the record, which includes "pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any. . ."  Rule 56(c), M.R.Civ.P.

This action is based upon a complaint filed in February
of 1978 and amended in August of 1978.  The amended complaint
alleges, among other things, that Smyk refused to agree to
any sale of the property in question to the offeror, Hammons,
despite repeated demands by Downs that he do so; and that
such refusal was in violation of Downs' rights to control
sale of the property under the June 1976 agreement.  In his
answer, filed in September of 1978, Smyk specifically
denied the above allegations.

Smyk, in his brief in opposition to Downs' August 1978
motion for summary judgment, asserted that there were "numerous

issues of material fact which the defendants contend to be genuine." Smyk stated that he "never received a concrete offer from anyone" for the property, and that Downs had presented no evidence to the contrary. He flatly denied that Downs requested that Smyk agree to a sale to Mr. Hammons or Hammons Industries, or presented him (Smyk) with a buy-sell agreement for examination.

Downs, responding to Smyk's assertions, referred to the following few lines in Smyk's deposition, as he has continued to refer to and rely upon them:

> "Q. Now, Mr. Smyk, do you recall last fall that Mr. Downs requested that you agree to a sale of this property to a man named Hammons? A. Yes, he told me that he had been in contact with Hammons in regard to selling it, or trying to sell it, or buy it or whatever.

> "Q. Did you at any time agree to any such sale? A. No."

Downs would have this Court interpret Smyk's statements as proof of both the statement and rejection of Downs' request that Smyk agree to the sale of the property to Hammons. But the statements could as reasonably be read to mean that, while Downs mentioned to Smyk in passing that Hammons had expressed interest in purchasing the property, he did not request or receive Smyk's approval. Smyk did not say that he refused to sell, only that at no time had he agreed to it. The record clearly indicates Smyk's repeated denial of Downs' assertion that Smyk had refused to sell the property. In the absence of proof that Smyk had so refused, we find Downs failed to establish that there existed no genuine issue of material fact.

Smyk also maintains, as he has throughout this action, that neither party intended to sell the property and the June 1976 agreement providing for Downs' control of "any contractual arrangements" did not contemplate the possibility

of Downs forcing Smyk to agree to _sell_ the property.

Ordinarily, extrinsic evidence of the terms of a written agreement is inadmissible. Section 28-2-905, MCA. However, where the terms of a document are unclear or ambiguous, and parol evidence will indicate the parties' purposes in executing the agreement and facilitate necessary interpretation of their intent, parol evidence will be admitted. See sections 28-2-905(a), (b) and 1-4-102, MCA; Fillbach v. Inland Construction Corporation (1978), 178 Mont. 374, 584 P.2d 1274. In Thisted v. Country Club Tower Corporation (1965), 146 Mont. 87, 96, 405 P.2d 432, 436, this Court, citing earlier cases, stated that, while the written instrument cannot be contradicted or varied by parol testimony, "[t]he rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." (Cites omitted.) Here the District Court was presented with an inartfully drawn and imprecise instrument; reference to extrinsic evidence indicating the intention of the parties was proper. Moreover, because the same attorney represented both clients in drafting and witnessing the signing of the agreement, the intent of the parties, and the circumstances surrounding the agreement are particularly important.

Downs has consistently maintained that his exercise of his "rights" under the June 1976 agreement was precluded by Smyk's refusal to agree to sell. Smyk has denied, from the time he answered the amended complaint, that Downs' rights included the right to control the _decision to sell_. The disputed provision merely states that Downs will control "any contractual arrangements" until contributions are equalized. It is unclear whether this provision is so broad that it allows Downs virtually unlimited control over the use and disposition of the land, or whether it merely means

-13-

that, when the parties agree upon a certain course of action regarding the property, Downs will _then_ control any contractual arrangements.

The record contains the following statements:

> (Downs Deposition): "[O]ur agreement was to buy the land and, as soon as we could sell it, to make a profit. It's just that simple.
>
> ". . .
>
> "Q. You have not at anytime had a professional appraisal of this property made. (No response.)
>
> "Q. I believe that's what you told me earlier. A. That's right.
>
> "Q. Are you aware whether Mr. Smyk has ever done so? A. I don't know what Mr. Smyk has done.
>
> "Q. Or anyone else? A. --He wasn't trying to sell it. That wasn't what we was trying to do when we got in there."
>
> (Smyk's answers to interrogatories:)
>
> "The attached agreement is the written document the parties signed, although both realized that it did not in fact reflect the intention of the parties."

In the original appeal, Downs v. Smyk, _supra_, this Court found that there was no genuine issue of material fact before the Court. Clearly, that finding is applicable only to those matters as to which summary judgment was actually granted; this Court will not determine the propriety of rulings which are not placed in issue on appeal. Here, however, there are clearly unresolved factual disputes which have existed from the inception of this action. It is evident to this Court that the District Court erred in finding that no genuine issues of material fact existed and granting summary judgment to Downs.

Therefore, we reverse the District Court's order of August 11, 1981, and its final judgment entered September 16, 1981, insofar as they grant Downs one year of control

-14-

over contractual arrangements, and remand the matter for trial on the merits. We affirm the District Court in its determination that Smyk is not entitled to a jury trial in this matter.

We do note, in returning this cause for trial, that the imprecision and incompleteness of several of the provisions in the June 1976 agreement warrant careful attention to the circumstances surrounding the agreement and the purposes and intentions of the parties in executing the agreement. We have pointed out that the provision allowing Downs control of "any contractual arrangements" until payments were equalized could mean either control over every decision regarding use and disposition of the property, or shared determinations of use and disposition, with Downs controlling all the consequent contractual arrangements. The agreement also fails to set forth the resulting rights and liabilities of the parties should Smyk default on the contract for deed, or should Downs force partition and sell his interest in the property. The provision that, after equalization, Downs and Smyk would share equally "all liabilities and profits, if any," leaves open the question whether "liabilities" includes payments on the contract for deed. The parties themselves appear to agree that Downs' payment of $60,000 toward the $300,000 purchase price was all that was required of him, and that the remaining $240,000 was to be paid by Smyk.

The imprecise agreement was witnessed by an attorney who was representing both parties, and firmly underscores the principle that an attorney cannot effectively represent the interests of adverse parties, or, as here, clients whose interests are clearly divergent and potentially adverse.

We also note the failure of Downs to request specific performance as a remedy in his amended complaint.

Reversed in part, affirmed in part and remanded to the District Court for further proceedings consistent with this

opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices