No. 82-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

DIANA ABELL and JESSE ABELL,

Plaintiffs and Appellants,

vs.

TRAVELERS INSURANCE CO.,

Cross-Claimant in Intervention
and Respondent,

vs.

JAMES A. RENO,

Defendant.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Diane Barz, Judge presiding.

Counsel of Record:

For Appellant:

Gene Huntley argued, Baker,  Montana

For Respondent:

McNamer, Thompson & Cashmore, Billings, Montana
Charles Cashmore argued, Billings, Montana

_____

Submitted:  April 21, 1983

Decided:  May 19, 1983

Filed:  MAY 19 1983

_Ethel M. Harrison_

_____
                                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from the District Court of the Thirteenth Judicial District, County of Yellowstone. We are asked to review an order granting summary judgment in favor of Travelers Insurance Company. We find that a factual question exists, therefore, summary judgment was improper.

In 1974, Diana Abell was injured in an automobile accident. Abell retained James Reno as her attorney. In 1976, Reno negotiated a settlement with Pierce Manufacturing and its insurer for $300,000; such sum as compensation to Abell for injuries received in the accident. Of the $300,000, $100,000 was taken by Reno for attorney fees, $25,000 was to finance a related and contemplated action against Ford Motor Company, and $50,000 was set aside for Travelers Insurance to satisfy their subrogation interest. Travelers had paid sums in excess of $50,000 to Abell pursuant to its obligation as a carrier of workers' compensation insurance.

Prior to reaching the settlement with Pierce, Reno wrote a letter to Mr. Luoma of Travelers Insurance Company. The letter, which was dated February 3, 1976, indicates the anticipated settlement of $300,000 and the proposed use of part of those funds. In pertinent part the letter reads:

> "This letter will confirm our telephone conversation of Friday, the 30th day of January, 1976, concerning my proposed action on the Diana Abell file.
>
> ". . .
>
> "I am anticipating reaching a settlement with the insurance carrier of the driver who struck the Abell car. I have negotiated a settlement figure in the amount of approximately $300,000.00, and should receive this amount in the very near future.
>
> ". . .
>
> "I propose to put $25,000.00 in a special trust account for the payment of the expenses of litigation. I would also propose an additional $50,000.00 be put into a special trust account for the payment of your firm's subrogation claim. I anticipate that that amount will certainly be sufficient in view of the fact that it will be necessary to deduct the

appropriate percent of the expenses, cost, etc. I am not exactly sure of the formula to be used in that, but I imagine that we can arrive at an agreement in that regard. (emphasis added.)

"I do desire Mrs. Abell to continue under her compensation coverage until released by the doctor, which I anticipate will be June or July of this year.

"Please review this matter with your supervisors and let me have the benefit of your thinking."

On March 1, 1976, after receiving the settlement, Reno established a trust account in the amount of $50,000. Presumably, this money was earmarked for Travelers Insurance Company. The trust document was signed by Reno and the Abells. Reno was designated trustee and the Abells were both the grantors and the beneficiaries. Travelers never received any of these funds. The bulk of this account was eventually transferred into a second trust account. Reno was also designated as the trustee of the second account and the Abells were designated as beneficiaries, however, the Abells did not sign the second trust account document. Reno made numerous misappropriations from the second account. The evidence shows that about one-half of the $50,000 was wrongfully converted by Reno. The name of Travelers did not appear on any of the documents related to the two accounts.

The Abells commenced this action against Reno to account for the $25,000 which was meant to finance a suit against Ford Motor Company. Concerning the $50,000, earmarked for Travelers, the complaint alleged that any use or disposition of those funds was a matter between Reno and Travelers. In other words, the Abells claimed that if Travelers was not paid for its subrogation interest, they would be required to seek relief against Reno.

Travelers intervened and argued that it never received any of the funds which Reno set aside in trust, and it retains its full subrogation interest in the Abell's claims. Essentially, Travelers asserts that any loss due to misappropriation of funds by Reno must be borne by the Abells.

Travelers moved for summary judgment; the motion was granted. The Abells then appealed.

This Court has often stated the rules in regard to summary judgment.

> "'Under Rule 56(c), M.R.Civ.P., a summary judgment is proper only if the record discloses no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (citations omitted.) The party moving for summary judgment has the burden of showing the complete absence of any genuine issue as to all facts which are deemed material in light of those substantive principles which entitle him to a judgment as a matter of law. (citations omitted.) Once the movant has established that no material issues of fact exist, the burden shifts to the opposing party to raise an issue of fact.' (citation omitted.)
>
> "'It is well established in Montana that all reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party who opposes summary judgment." (citations omitted.) Downs v. Smyk (1982), _____ Mont. _____, _____, 651 P.2d 1238, 1243, 39 St.Rep. 1786, 1792-93.

The purpose of summary judgment is to encourage judicial economy by avoiding unnecessary trials. Cereck v. Albertson's Inc. (1981), _____ Mont. _____, 637 P.2d 509, 38 St.Rep. 1986. However, the rule cannot be used as a substitute for trial. The court cannot decide factual issues; rather, it can only determine whether a factual issue exists. Small v. McRae (1982), _____ Mont. ____, 651 P.2d 982, 39 St.Rep. 1896.

In this case the court resolved a factual issue. The court determined that the evidence did not support a relationship between Reno and Travelers. In response to appellant's assertion that the Reno letter indicated a trust relationship between Reno and Travelers, the court stated:

> "[a] trust must be founded on evidence which is unmistakable, clear, satisfactory and convincing. (citation omitted.) . . . In the instant situation the only evidence relied on by the Abells that Reno had established a trust for Travelers is certain language contained in Reno's letter of February 3. . . . This is not the type of evidence which is unmistakable and convincing."

It is obvious that the court was judging the evidence. We

- 4 -

reverse the order granting summary judgment and remand for further proceedings.

_____
                          Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr.:

    I concur in the result.

_____
                          Justice

I concur in the result also.

_____
                          Justice

Mr. Justice L. C. Gulbrandson dissenting.

I respectfully dissent:

Travelers, in its cross-claim in intervention, sought a court determination that its subrogated interest was not partially satisfied by virtue of the transactions relating to the $50,000 sum.

After the Reno letter of February 3, 1976, the Abells, on March 1, 1976, as grantors, executed a Discretionary Revocable Trust Agreement at the First Federal Savings and Loan Association, Billings, Montana, naming James A. Reno, as trustee, and themselves as beneficiaries, and specifically reserved to themselves the power to revoke said trust at any time.

On the same date, the $50,000 sum was invested in Savings Certificate #41105340, issued to James A. Reno, trustee for Diana M. Abell and Jesse Abell.

On May 21, 1981, the Abells, in answers to interrogatories, stated:

> "I also did see this certificate when he first purchased it, so I know it was for real-----."

Reno obviously considered himself as trustee for the Abells with regard to said account. By letter, dated March 3, 1980, Reno stated:

> "I am currently holder of Savings Certificate 0411-05340, as trustee for Diana M. Abell and Jesse Abell."

In my view, the party resisting the motion had a duty to present evidence that a factual dispute did exist and did not do so.

The District Court properly determined that Reno acted as trustee for the Abells, and that any action Reno took with respect to the funds could not be considered as payment to Travelers.

I would affirm.

_____
Justice

- 6 -