No. 83-302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

GLENN E. ROGERS,

        Plaintiff, Counterclaim Defendant and Respondent,

  -vs-

DOUGLAS J. SWINGLEY and NELDA J.
SWINGLEY, husband and wife,

        Defendants, Counterclaim Plaintiffs and Appellants.

APPEAL FROM:  The District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Hartelius and Ferguson, Great Falls, Montana

    For Respondent:

        M. Richard Gebhardt, Ronan, Montana
        Robert Emmons, Great Falls, Montana

Submitted on Briefs:  August 18, 1983

Decided:  October 20, 1983

Filed:  OCT 20 1983

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Douglas L. Swingley and Nelda J. Swingley, defendants, appeal from the summary judgment of the District Court, Eighth Judicial District, Cascade County, granted in favor of Glenn E. Rogers, plaintiff. We find the District Court erroneously granted summary judgment. The judgment is hereby reversed and the case remanded to the District Court.

Douglas L. Swingley and Nelda J. Swingley first met Glenn E. Rogers and his wife at the International Mink Show held in Madison, Wisconsin, during January 1978. Both the Swingleys and the Rogers were then in the business of raising mink. The Rogers were operating a mink ranch in Ronan, Montana, and the Swingleys had begun operation of a mink ranch west of Great Falls, Montana.

Glenn E. Rogers had begun his mink ranching operation through a mink leasing arrangement and he suggested that the Swingleys might also be able to benefit from an arrangement of this kind. The Swingleys agreed and in early December 1978 the parties entered into a written lease agreement whereby Rogers agreed to lease 600 pastel female mink and 120 male mink to the Swingleys. In return, the Swingleys agreed to pay Rogers one kit per female mink annually, or one-fourth of the annual kit crop, if the total female mink leased produced an average of four kits. The term of the lease was from November 15, 1978 to November 15, 1980.

At or about the time the parties entered into the lease agreement, Rogers strongly suspected that at least a small percentage of those mink leased to the Swingleys were infected with Aleutian Disease (AD). This disease affects

the productivity of the mink and impairs their resistance to other diseases.

Douglas L. Swingley eventually became aware of greater than normal losses among the leased mink and their kits and a lower than normal productivity rate among the female mink. Because of these problems, the parties agreed to a payment of $5,000 on the lease for the first year rather than a payment of mink. The problems continued into the second year and Swingley did not make the final payment under the lease.

To ensure payment, Rogers then sought a temporary restraining order preventing the Swingleys from selling any of the mink or mink pelts. The parties then attempted to reconcile their differences by replacing the lease with a promissory note for $49,750 and a mortgage as security for the promissory note. The promissory note contained five paragraphs: the first four paragraphs set forth the terms for payment of the obligation and the last paragraph contained a release whereby "the makers of this note hereby covenant and agree to release GLENN E. ROGERS and TREASURE STATE MINK RANCH from any and all future liability which may arise out of the said mink lease."

The Swingleys failed to make the first payment on the promissory note and on June 3, 1981, Rogers filed a complaint asking for judgment against the Swingleys for the full amount of the promissory note and for foreclosure of the mortgage securing the promissory note. The Swingleys filed an answer and a counterclaim in which they alleged that the promissory note and mortgage were procured through fraud and that Rogers was liable to them for various damages. Although Rogers has alleged that he informed the Swingleys of the presence of AD in the leased mink soon after the lease was signed, the

Swingleys claim that they never knew that the leased mink were infected with AD and that they would not have signed the promissory note containing the release if they had known that the mink were infected.

Rogers moved for summary judgment following discovery. The District Court granted summary judgment for Rogers, awarded him the full amount of the promissory note, and ordered the mortgage foreclosed.

The sole issue on appeal is whether summary judgment was properly awarded to Rogers. More specifically, viewing the record in the light most favorable to the Swingleys, is there a genuine issue of material fact?

Summary judgment under Rule 56(c), M.R.Civ.P., is proper only if the record discloses no genuine issue of material fact as a matter of law. Abell v. Traveler's Insurance Co. (Mont. 1983), 663 P.2d 335, 40 St.Rep. 738; Downs v. Smyk (Mont. 1982), 651 P.2d 1238, 39 St.Rep. 1786.

This Court has consistently held that the party moving for summary judgment has the burden of showing the complete absence of any genuine issue as to all the facts which are deemed material in light of those substantive principles which entitle him to a judgment as a matter of law. Krone v. McCann (Mont. 1982), 638 P.2d 397, 39 St.Rep. 10; Big Man v. State (Mont. 1981), 626 P.2d 235, 38 St.Rep. 362. To satisfy this burden, the movant must make a clear showing as to what the truth is so as to exclude any real doubt as to the existence of any genuine issue of material fact. Kober & Kryss v. Stewart & Billings Deaconess Hospital (1966), 148 Mont. 117, 417 P.2d 476; 6 Moore's Federal Practice ¶ 56.15[3].

In addition, all reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party who opposes summary judgment. Abell v. Travelers Insurance Co. (Mont. 1983), 663 P.2d 335, 40 St.Rep. 335; Downs v. Smyk (Mont. 1982), 652 P.2d 1238, 39 St.Rep. 1786; Brown v. Merrill Lynch Pierce Fenner's Smith, Inc. (Mont. 1982), 640 P.2d 453, 39 St.Rep. 305.

Here, the District Court failed to properly apply these principles. In its finding of fact no. 4, the District Court stated:

"4. The affidavit of defendant Douglas L. Swingley stated that he was unaware, at the time the note was executed, that his mink were infected with Aleutian Disease and, therefore, the note was secured by fraud by plaintiff. This assertion is not supported by evidence."

In support of this conclusion, the court cited the following:

"5. In sworn testimony of Defendant Douglas L. Swingley in Swingley v. Kernaghan's Services, Inc., et al, Eighth District, Cascade County, CDV-80-416, Defendant Swingley, in answer to cross-examination by Robert J. Emmons, Attorney-at-law, stated:

"'Q. At one time you indicated that you had 70% of your herd were infected with this particular disease. Is that correct? A. Yes.'

"Q. What year was that? A. That was November of 1980."

From this the Court found:

"6. By Defendant Douglas Swingley's sworn admission, he stated that he was aware of the Aleutian Disease infection prior to execution of the promissory note."

This appears to be the decisive piece of evidence which ultimately led the District Court to grant summary judgment. If Douglas Swingley knew that his mink were infected with Aleutian Disease prior to the execution of the promissory note, there would be no genuine issue of material fact and

summary judgment would be proper. However, the statement made by Douglas L. Swingley can be read two ways:

1) That, Douglas L. Swingley knew, in November 1980, that his mink were infected with AD; or

2) That, at the time of his deposition in 1981, Douglas L. Swingley knew that his mink had been infected in November 1980.

If Douglas L. Swingley is to be afforded the benefit of all reasonable inferences that may be drawn from the evidence, then the possibility of hindsight must be examined.

In his deposition, Douglas Swingley stated that he called Rogers on the telephone some time in early December 1980 after the promissory note was signed. At that time, Rogers told Swingley that Rogers had tested his mink herd for AD during November 1980, and the test results revealed that about 30 percent of his mink were infected with AD. Swingley then tested his mink and the results revealed that around 70 percent of his mink were infected with AD.

When Swingley responded in the deposition cited by the District Court that 70 percent of his mink were infected with AD in November 1980, instead of December 1980, when he tested his mink, he could merely have been looking back to the earliest time when he could be sure that his mink were infected with AD. Rogers tested his mink in November 1980. Swingley leased the mink from Rogers. Therefore, Swingley could reasonably assume that the leased mink in his possession were also infected with AD as early as November 1980.

This Court has consistently held that the District Court's function is not to adjudicate genuine issues of fact on a motion for summary judgment; its function is merely to

determine whether such issues exist. Abell v. Travelers Insurance Co. (Mont. 1983), 663 P.2d 335, 40 St.Rep. 738; Small v. McRae (Mont. 1982), 651 P.2d 982, 39 St.Rep. 1896. If there is any doubt as to the propriety of a motion for summary judgment, it should be denied. Cheyenne Western Bank v. Young (1978), 179 Mont. 492, 587 P.2d 401; Engebretson v. Putnam (1977), 174 Mont. 409, 571 P.2d 368; Fulton v. Clark (1975), 167 Mont. 399, 538 P.2d 1371.

It is not clear, so as to exclude all real doubt, that the burden of establishing no genuine issue of material fact was met. The summary judgment is reversed and the case remanded to the District Court for further proceedings.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices