MR. JUSTICE MORRISON
delivered the opinion of the Court.
Plaintiff brought this action to recover damages for breach of the covenant of good faith and fair dealing implicit in an at-will, employment contract. Summary judgment for defendant was reversed in Gates v. Life of Montana (1982), 196 Mont. 178, 638 P.2d 1063, 39 St. Rep. 16. The case was remanded for trial and resulted in a jury verdict in favor of plaintiff for $1,891 in compensatory damages and $50,000 in punitive damages. The trial court entered judgment for plaintiff on compensatory damages but entered judgment notwithstanding the verdict in favor of defendant on puni *306 tive damages. Plaintiff appeals from the granting of the judgment n.o.v.
Appellant commenced employment as a cashier with respondent on July 29, 1976, under an oral contract of indefinite duration. On October 19, 1979, she was called to meet with her supervisor, Roger Syverson, and without prior warning she was given the option of resigning or being fired. She testified that while in a distraught condition and under duress she signed a letter of resignation which was handed to her by Syverson. Appellant stated that she signed the letter of resignation because she thought it would be better for her record and because Syverson told her he would give her a letter of recommendation so that she could be reemployed.
Appellant went home and discussed the situation with her husband who advised her to retrieve the letter of resignation and inform her supervisor that she was not resigning. Appellant stated that she immediately called Syverson and demanded the letter be returned and that he promised to do so. Syverson testified that she only requested a photocopy of the letter.
Respondent’s witneses testified appellant was discharged for carelessness, incompetency and insubordination. In the first appeal we held there was a submissible jury issue on breach of the implied covenant of fair dealing in that appellant was discharged without warning and an opportunity for hearing. The jury here found that this covenant was indeed breached and awarded damages.
On appeal, we are concerned with two issues. First, can punitive damages be awarded for breach of the covenant to deal fairly? Secondly, does the evidence here create a jury issue on punitive damages?
In Lipinski v. Title Insurance Co. (1982), 202 Mont. 1, 655 P.2d 970, 39 St.Rep. 2283, this Court held that punitive damages could be assessed for bad faith insurance practices in absence of a statutory violation. We said in Lipinski:
“Should there be any doubt, we now expressly hold that *307 insurance companies have a duty to act in good faith with their insureds, and that this duty exists independent of the insurance contract and independent of statute. Any statements in our cases, to the extent they may be or appear to be in conflict with this holding, are expressly overruled.”
Likewise, punitive damages may be assessed for breach of the obligation owed to deal fairly with an employee, if the provisions of section 27-1-221, MCA, are satisfied. That section provides:
“In any action for a breach of an obligation not arising from contract where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant.” (emphasis added)
An action for breach of an implied covenant of fair dealing, at first blush, may sound both in contract and tort. The duty arises out of the employment relationship, yet the duty exists apart from, and in addition to, any terms agreed to by the parties. In this respect, the duty is much like the duty to act in good faith in discharging insurance contractual obligations. See Lipinski v. Title Ins. Co., supra. The duty is imposed by operation of law and therefore its breach should find a remedy in tort. Flint and Walling Mfg. Co. v. Beckette (1906), 167 Ind. 491, 498, 79 N.E. 503, 505. Also see W. Prosser, Law of Torts (4th ed. 1971), §92 at 617-618.
We hold that section 27-1-221, MCA, only exempts breach of contract actions from its provisions. Breach of the duty owed to deal fairly and in good faith in the employment relationship is a tort for which punitive damages can be recovered if defendant’s conduct is sufficiently culpable.
We must examine the record in this case to determine whether there is evidence which would permit a jury to find malice, oppression or fraud attributable to the defendant. Motions for judgment notwithstanding the verdict are only to be granted when there is a complete absence of any cred *308 ible evidence to support the verdict. All evidence and all inferences drawn therefrom must be considered in the light most favorable to this appellant. Barmeyer v. Montana Power Company (1983), 202 Mont. 185, 657 P.2d 594, 40 St.Rep. 23. “The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision.” Barmeyer at 40 St.Rep. 25; Jacques vs. Montana National Guard (1982), 199 Mont. 493, 649 P.2d 1319, 1325-26, 39 St.Rep. 1565, 1573-74.
With these rules in mind we review the testimony upon which appellant must necessarily rely in her contention that a jury issue was created on the matter of punitive damages. We have divided the testimony which was offered to show that a letter of resignation was coerced by misrepresentation. Secondly, we refer to that testimony bearing upon the issue of whether appellant’s supervisor agreed to return the resignation letter and then subsequently failed to do so.
With respect to the conversation surrounding appellant’s tendering a resignation letter, appellant testified as follows:
“Q. And did he point out to you that he would give you this letter of recommendation? A. Yes, he did, and he even stated that I was a good worker, he had nothing against me and that he would give me a letter of recommendation.
“Q. And did you understand by that that he would give you a positive letter of recommendation? A. Yes.
“Q. Not merely as he has said a statement that you had worked for two or three years? A. That’s right.”
Syverson, appellant’s supervisor, testified that he offered to give appellant a letter of recommendation if she resigned. However, he testified that he only planned to give her a letter which would state that appellant was employed by Life of Montana Insurance Company; he never intended to provide appellant with a favorable letter of recommendation. There was evidence from which the jury might infer that appellant understood she was to receive a favorable letter of recommendation and that Syverson allowed her to resign on *309 this basis. By way of deposition, Syverson testified:
“Q. And then I asked you finally, ‘Question: Don’t you think she understood when you said, “We will give you a letter of recommendation,” that you would give her a favorable letter or recommendation to a subsequent employer?’ And your answer to that was what? A. At line 15, Answer: I believe so.”
From the foregoing the jury could have found that (1) Syverson acting for defendant told appellant if she resigned she would receive a favorable letter of recommendation in order to obtain subsequent employment; (2) appellant reasonably expected to receive a favorable letter of recommendation to assist her in gaining reemployment; (3) appellant relied upon this representation and tendered her resignation; (4) Syverson never intended to give a favorable letter of recommendation to appellant. This evidence was sufficient for the jury to find fraud, oppression or malice.
Additional evidence supports appellant’s position. After appellant returned home her husband advised her to demand return of the resignation letter. Appellant testified she immediately called Syverson and discussed the resignation letter. Her testimony follows:
“Q. And what did you say? A. I told him that I had discussed this with my husband and that it was my prerogative that I could ask for my letter of resignation back because I had no intentions of resigning.
“Q. And what did Mr. Syverson say to you? A. He indicated to me that he wanted to keep the letter over the weekend and that on Monday he would mail it to me.
“Q. He would mail you the letter of resignation? A. He would mail me the original copy of the letter of resignation.
“Q. Now, when we are talking here, are the original and copy two different things? A. On the original letter?
“Q. The original letter that you had signed? A. Yes.
“Q. Did you make clear to him that that’s what you wanted back? A. Yes, I did.
“Q. Because you said you didn’t intend to resign? A. *310 That’s right.”
Appellant testified that Syverson promised to send her the letter of resignation. Appellant’s testimony was corroborated by her husband who testified that he heard appellant, in a telephone conversation with Syverson, demand return of the resignation letter. The letter was never returned. Syverson’s position at trial was that he only agreed to give appellant a copy of the letter.
From this evidence the jury could infer that (1) appellant demanded return of the resignation letter; (2) Syverson acting on behalf of respondent said that the letter would be returned; (3) Syverson never intended to return the resignation letter to appellant. This evidence, when considered with the testimony surrounding the giving of the resignation letter, supports an award of punitive damages.
Respondent argues that it should not be liable for punitive damages for terminating appellant without warning because at the time of appellant’s termination there was an absolute right to fire without any type of process. Respondent asserts that new legal rights were given to appellant in the first appeal of this case and that respondent could not have known of the duty it owed appellant at the time of her termination.
Respondent is not being assessed punitive damages for failing to provide a warning prior to the firing. Rather respondent’s conduct in obtaining the letter of resignation and refusing appellant’s demand for return forms the basis for a jury finding of fraud, oppression or malice.
An employer stands to gain by an employee’s resignation and such gain may be at the employee’s expense. Resignation, rather than discharge, may protect an employer from immediately becoming liable for unemployment compensation benefits. Furthermore, the employer may, by obtaining a letter of resignation, be insulating itself from a claim of wrongful discharge.
The courts must vigilantly assure that employers, as well as employees, are treated fairly. The sting of punitive *311 damages will only be sanctioned where there is evidence that the tort feasor’s conduct rose to a level of oppression, fraud or malice. Here we have a close case. However, when the evidence is viewed in a light most favorable to the employee, there is sufficient evidence for a jury to find that employer’s conduct rose to the requisite level of culpability.
We reverse the granting of summary judgment notwithstanding the verdict and remand to the trial court with directions to reinstate the award of punitive damages.
MR. CHIEF JUSTICE HASWELL and JUSTICES SHEA and SHEEHY concur.