**Joanne KYRISS, in her capacity as Conservator for Frank Templin, Plaintiff,**

**v.**

**The AETNA LIFE AND CASUALTY COMPANY, a Connecticut corporation, Defendant.**

**No. CV 84–115–M–CCL.**

United States District Court,
D. Montana,
Missoula Division.

Jan. 9, 1986.

Terry Trieweiler, Whitefish, Mont., Sharon Morrison, Helena, Mont., for plaintiff.

Douglas Buxbaum, Poore, Roth & Robinson, Butte, Mont., for defendant.

## OPINION AND ORDER

LOVELL, District Judge.

On October 3, 1985, the Supreme Court of Montana upheld a damage award in the amount of $225,000 in favor of the above-named plaintiff against the State of Montana and two physicians, Roger A. Ganfield and Leonard M. Benjamin, who treated Frank Templin at the Montana State Prison. *Kyriss v. State of Montana, et al.,* 42 St.Rep. 1487, 707 P.2d 5 (Mont.1985). Frank Templin was incarcerated for forging a check in the amount of $30.00. While imprisoned, Templin's right great toe became infected. Over a period of time his condition worsened, eventually resulting in gangrene, and doctors were forced to amputate his right leg. Plaintiff instituted a medical malpractice action in state district court, and by the time the jury verdict was affirmed by the state supreme court Frank Templin had died.

During the pendency of the appeal, plaintiff filed this action against Aetna Life and Casualty Company ("Aetna"), the professional liability insurer of Doctors Ganfield and Benjamin. Plaintiff's complaint alleges that Aetna breached its statutory obligation to negotiate in good faith with Frank Templin or his Conservator and to expeditiously settle his claim.

Aetna has moved to strike three paragraphs from the complaint which allege that Aetna acted in bad faith and solely for the purpose of delay in appealing the state court verdict and judgment to the Supreme Court of Montana. Because Aetna's motion was filed more than 20 days after the complaint was served, it will be treated as a motion for judgment on the pleadings. *See* Rule 12(c), (f), Fed.R.Civ.P.

Aetna's motion is based on three primary arguments. First, Aetna maintains that Rule 32 of the Montana Rules of Appellate Procedure grants the Montana Supreme Court exclusive jurisdiction to determine the merit of an appeal. Aetna takes the position that this court has no jurisdiction to entertain the question of whether an appeal was taken for delay, for the reason that inconsistent rulings could result in an interference with the province of the state supreme court. Second, Aetna argues that allowing bad faith actions to be premised on the filing of an appeal impinges on a party's constitutional right of unfettered access to the courts. Finally, Aetna asserts that plaintiff's claims are without statutory basis because the Montana Unfair Claims Settlement Act, § 33–18–201, M.C.A., does not apply to post-judgment proceedings.

Plaintiff contends in response that the motive behind Aetna's decision to appeal is but one factor in plaintiff's bad-faith action, and would merely be presented to the jury as evidence of Aetna's continuing bad faith throughout the pendency of plaintiff's claim. Plaintiff further asserts that appellate review is limited to the facts on the trial record and the parties' arguments within their briefs, whereas a bad-faith action allows the plaintiff to conduct dis-

covery and to inquire into the reasons for the decision to appeal, which reasons are relevant to the good faith or bad faith of Aetna's actions.

The statutory basis for plaintiff's action is § 33–18–201, M.C.A., known as the Unfair Claims Settlement Act, which has been part of the Montana Insurance Code since 1977. In pertinent part, § 33–18–201 provides:

No person may, with such frequency as to indicate a general business practice, do any of the following:

\* \* \* \* \* \*

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

\* \* \* \* \* \*

(11) make known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

\* \* \* \* \* \*

This section has been construed as creating a private cause of action for insureds and claimants alike; the Supreme Court of Montana has held that under § 33–18–201, "an insurer has an obligation to claimants as well as insureds where unfair trade practices are concerned," and that when such an obligation is breached the claimant has the basis for a civil action. *Klaudt v. Flink,* — Mont. —, 658 P.2d 1065, 1067 (1983). The court further held that such an action may be filed and tried before, concurrent with, or after the insured's liability to the claimant has been determined. *Id.* The court noted that an action against the insurer for violation of the insurance code is simply an action to determine whether or not the insurer violated its duty of fair dealing in settlement negotiations, and involves different issues than those raised in the underlying tort action.

*Klaudt v. Flink* represents one step in the development in Montana law of an "im-

plied covenant of good faith and fair dealing." This duty to deal in good faith has been applied not only to the insurance arena, *see Lipinski v. Title Ins. Co.,* 202 Mont. 1, 655 P.2d 970 (1982), but also to employer-employee relations, *Gates v. Life of Montana,* — Mont. —, 668 P.2d 213 (1983), *Dare v. Montana Petroleum Marketing Co.,* — Mont. —, 687 P.2d 1015 (1984); to banking institutions dealing with customers, *First National Bank of Libby v. Twombly,* — Mont. —, 689 P.2d 1226 (1984), *Tribby v. Northwest Bank of Great Falls,* — Mont. —, 704 P.2d 409 (1985); to a health service corporation's dealings with its members, *Weber v. Blue Cross of Montana,* 196 Mont. 454, 643 P.2d 198 (1982); and to fee arrangements between a lawyer and his client, *Morse v. Espeland,* — Mont. —, 696 P.2d 428 (1985). In the most recent development, the Montana Supreme Court upheld the application of the implied covenant to a breach of contract between two parties of substantially equal bargaining power, although the court declined to extend the breach of implied covenant to all contract breaches as a matter of law. *Nicholson v. United Pacific Ins. Co.,* — Mont. —, 710 P.2d 1342 (1985).

The court stated in *Nicholson* that the implied covenant of good faith and fair dealing is not an obligation arising from a contract, but rather gives rise to a tort resulting from its breach which "depends on some impermissible activity." *Id.,* at —. The court held that "[t]he nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties." *Id.,* at —. *Nicholson,* while not directly applicable to the present case, demonstrates the broad view which the Montana Supreme Court has taken of the tort of bad faith.

Aetna argues that bad faith in the insurance context consists exclusively of the actions enumerated in § 33–18–201, M.C.A., and that no other claims may be stated against the insurer. One division of this court has so held. *Marzolf v. Hoover,* 596 F.Supp. 596 (D.Mont.1984). The Supreme

Court of Montana, in first-party situations, has held that insurance companies have a duty of good faith which exists independent of the insurance contract and independent of statute. *Lipinski v. Title Ins. Co., supra.*, 655 P.2d at 977. *Lipinski* was reaffirmed in *Birkenbuel v. Montana State Comp. Ins. Fund,* —— Mont. ——, 687 P.2d 700, 702 (1984), where the court held: "Bad faith in claims settlement is an actionable tort independent of the insurance code." This rule has not expressly been extended to third-party actions, and I find it unnecessary to do so in this case.

While one may question how the Montana court got where it did from where it began, no one can take issue with its arrival. *See Tribby, supra,* 704 P.2d at 419 (discussing *Twombly, supra.*); *See also, Gates, supra.*, 668 P.2d at 220 (Gulbrandson, J., dissenting), and 668 P.2d at 221 (Weber, J., dissenting).

In this case, the tort of bad faith allegedly occurred during four separate phases of the malpractice action; 1) prior to any action being filed regarding the negligence of Aetna's insureds; 2) after the filing of the state tort action; 3) during the litigation of that action; and 4) after a judicial determination of liability. Each alleged phase constitutes one element of the tort. In order to successfully maintain this action, plaintiff must show the lack of good faith in settlement negotiations to be a general business practice employed by Aetna. Under *Klaudt v. Flink, supra.*, plaintiff may demonstrate a frequent business practice by showing "multiple violations occurring in the same claim." *Id.*, 658 P.2d at 1068. Evidence that an appeal was taken in bad faith is neither inconsistent with the general tort principles expressed by the Montana Supreme Court, nor is it inconsistent with the legislative intent expressed in § 33–18–201(6), M.C.A. The statute speaks generally in terms of "claims," but does not indicate that "claim" is to be given anything but its ordinary meaning, which includes "cause of action."

■ Aetna's jurisdictional argument fails for the same reasons. Section 33–18–

201 would be stripped of its effectiveness if it did not allow the court to consider all stages of the negotiation and litigation process. Appeal is but one part of that process. Rule 32, M.R.App.P., does not alter this conclusion; it merely gives the Montana Supreme Court authority to award "proper" damages if it "is satisfied from the record and the presentation of the appeal" that the appeal was taken for purposes of delay only. This rule does not deprive a trial court, state or federal, of jurisdiction to consider the motive behind a decision to appeal as one factor in a claim for bad faith against an insurance company. At the appellate level, the decision that an appeal is frivolous is based purely on the trial record and on the appellate briefs and arguments. In a bad faith action, it becomes a question for the jury, to be considered in view of all of the plaintiff's evidence of the insurer's conduct in negotiations from start to finish. Of course, if there is sufficient evidence to show a good-faith basis for the appeal as a matter of law, an appropriate motion for directed verdict may be entertained. *See, St. Paul Fire & Marine Ins. Co. v. Cumiskey,* —— Mont. ——, 665 P.2d 223 (1983).

■ Similarly, Aetna's position that plaintiff's claims constitute a "chilling effect" on Aetna's right of access to the courts is without merit. Parties to a state suit in Montana are free to appeal an adverse decision to the state supreme court; review is not discretionary. In this case, the subject matter of Aetna's appeal was the underlying malpractice action, and the issue concerned the proper standard of causation. The subject matter of the instant action is the conduct of Aetna throughout the pendency of plaintiff's malpractice claim—prior to, during, and after trial. The issue of Aetna's bad faith in claims settlement practices is a jury question, and the jury should consider all the facts of the case in reaching its verdict. Montana has enacted a broad legislative scheme for the regulation of insurance companies in accordance with federal law and with the Montana Constitution. *See,* 15 U.S.C.

§ 1012(a); Mont. Const. Art. XIII, § 1(2) (1972). It is not unconstitutional for this Court to hold insurance companies to the standards imposed by the state.

Defendant's motion is DENIED.