No. 89-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOY SMITH,

Plaintiff and Appellant,

-vs-

IONA BARRETT, KENT LEMBKE, and EUGENE
ATHERTON,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael Donahoe, Helena, Montana

For Respondent:

E. Eugene Atherton, Kalispell, Montana

Submitted on Briefs: Jan. 25, 1990

Decided: March 8, 1990

Filed:

Clerk

Justice R.C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Eleventh Judicial District, Flathead County, granting summary judgment in favor of the defendants/respondents in an action for declaratory judgment and tortious interferance with a business relationship, and awarding sanctions against the appellant and her attorney. We affirm the order of summary judgment and reverse the award of sanctions.

The issues on appeal are:

1. Whether the District Court properly granted summary judgment.

2. Whether the imposition of sanctions by the District Court was proper.

In late 1987, the appellant, Joy Smith (Smith) contacted Kent Lembke (Lembke), a real estate agent, concerning her desire to purchase a local general store. In response to this request, Lembke showed her the Elmo Store, in Elmo, Montana. The store was listed at $145,000.00. This price included both the store and all of the inventory on hand at time of sale.

After some negotiations between Smith, Lembke and the owner Iona Barrett (Barrett), Smith offered to buy the Elmo Store and its inventory for $99,500.00. Barrett rejected this offer because the price was too low and the inventory was to be paid for separately. Smith then made a new written offer and offered to buy the store

for $99,500.00 and to buy the store's inventory for $2,500.00. Barrett accepted this offer, and Smith gave Lembke a down payment in the form of a personal check in the amount of $30,000.00. Lembke as agent deposited the check in his trust account on December 11, 1987, the day after the sales contract was signed. His bank immediately forwarded it through banking channels for collection. Subsequently Smith's bank in Oklahoma honored the check, debited her account and forwarded a standard bank cashier's check to Lembke's bank in Kalispell.

Later that day, Smith went to the Elmo Store with the intention of doing an inventory of all of the store's merchandise. A disagreement arose between Smith and Barrett concerning the contractual provisions surrounding the sale of the inventory. Apparently, Smith believed that she was entitled to the entire inventory. Barrett, on the other hand, believed that Smith was only entitled to $2,500.00 worth of inventory. As a result of this disagreement, Smith expressed her desire to repudiate the contract.

Lembke attempted to hold the agreement together. However, Smith adamantly expressed her desire to back out of the contract. She was also very concerned over the whereabouts of the $30,000.00 payment she had given Lembke. She therefore stopped payment on the check. Her bank then notified Lembke's bank that it would not honor the cashier's check and payment was stopped at the federal reserve level.

Lembke then conferred with Barrett and suggested she retain

3

an attorney. As a result of this suggestion, Lembke contacted E. Eugene Atherton (Atherton), an attorney from Kalispell, Montana. After consultation with both Lembke and Barrett, Atherton authored three letters, one to Barrett, one to Smith and one to Smith's bank in Oklahoma.

The letter to Barrett confirmed that Atherton was engaged to induce Smith to complete the contract or to forfeit the $30,000.00. The letter to Smith contained a demand that Smith either complete the contract or forfeit the $30,000.00. And the letter to the bank in Oklahoma demanded that the $30,000.00 check be honored. The letter also suggested that the bank was exposing itself to liability and that to be safe, the bank should at least hold the money itself until the dispute was settled.

On receiving her letter, Smith contacted Michael Donahoe, an attorney, (Donahoe) for advice. Donahoe wrote Atherton and expressed his belief that no contract was ever formed due to a lack of meeting of the minds on the inventory term. Furthermore, Donahoe argued that the contract, if any, was not enforceable under the Statute of Frauds. Donahoe demanded that the $30,000.00 be released.

Following this exchange of letters, Atherton further conferred with his client. Barrett informed him that although she felt she was entitled to some money, she did not desire to litigate. Atherton then began to attempt to reach a settlement of the controversy. Eventually, when it became apparent that no

4

settlement would be forthcoming, the matter was dropped.

However, Smith was not satisfied by simply dropping the matter. She maintained that the actions of Atherton and Lembke deprived her of the use of her $30,000.00 for seven months, and as a result she incurred severe financial hardship, which led to destruction of her credit rating and loss of her health insurance. As a result of these damages, she sued Atherton, Lembke and Barrett alleging that they tortiously interfered with Smith's business relations by compelling the bank to hold the funds.

Barrett was dismissed from the action. The remaining defendants moved for summary judgment and also moved the court to assess sanctions. The lower court granted their motion for summary judgment and, in response to its opinion that plaintiff's cause of action was frivolous, assessed sanctions in the amount of $2,568.10. This appeal followed.

I

Smith maintains that the lower court erred in granting summary judgment. We disagree.

Summary judgment is proper under Rule 56(c), M.R.Civ.P., when the movant shows there is no genuine issue as to any fact deemed material, in light of the substantive legal principals entitling the movant to judgment as a matter of law. All reasonable inferences must be drawn in favor of the party opposing the motion. Cerek v. Albertsons's Inc. (1981), 195 Mont. 409, 637 P.2d 509. In making its determination on whether to grant a motion for

summary judgment, the court must consider the entire record. Hager v. Tandy (1965), 146 Mont. 531, 410 P.2d 447. We must now apply these principles to the formal issues presented by this case.

In her amended complaint, Smith alleges in paragraph 7 that:

Since filing this . . . action Plaintiff has become aware that defendant Iona Barrett never had any intention to engage in litigation against the Plaintiff concerning the purchase and sale agreement that was executed on December 10, 1987. Moreover Plaintiff has become aware that Mr. Lembke and Mr. Atherton brought significant pressure to bear upon Mrs. Barrett to engage in a controversy against the Plaintiff. Thus even though Mrs. Barrett had no desire to litigate Mr. Lembke and Mr. Atherton nonetheless made every effort to seize Plaintiff's Thirty Thousand Dollars ($30,000.00) earnest money.

Smith further alleges that as a result of these actions, her credit rating was ruined and she lost her health insurance. She therefore, prayed the court to award all damages found to be proximately caused by the defendant's alleged wrongful acts.

In her briefs on appeal, Smith maintains that the above allegations make out a prima facie case for the torts of interference with business relations and malicious defense. The tort of malicious defense, which is an outgrowth of malicious prosecution, has never been recognized in Montana. Although the tort is largely unrecognized throughout most jurisdictions, it has been the subject of indepth, scholarly discussion. See Comment, 47 Mont.L.Rev.101 (1986), Van Patten and Willard, 35 Hastings L.J. 891 (1984). The proponents of its recognition maintain that it is needed to counteract unfounded and malicious defense tactics.

6

In the case now before us, we do not decide whether this new tort should be recognized in Montana. However, for the sake of argument we will take note of its elements and apply them to Smith's case-in-chief.

The elements of malicious defense are:

1. The initiation, continuation or procurement of proceedings;

2. By or at the insistence of the Defendant;

3. Favorable termination of the underlying proceeding in which the frivolous or malicious defense was asserted

4. Lack of probable cause;

5. Malice; and

6. Injury or damages sustained as a result of the previous proceeding.

The evidence, viewed in a light most favorable to Smith, fails to satisfy these elements. In particular, we note that there is no evidence that either Atherton or Lembke acted with malice toward Smith. Barrett testified that although she did not desire to engage in litigation with Smith, she did feel she had entered into a valid contract for the sale of her store and that Smith breached that contract. As a result of that breach, Barrett felt she was entitled to retain the earnest money as liquidated damages.

Lembke and Atherton, working on her behalf, attempted to obtain this money, which they felt she had a legal right to retain. In their endeavor to complete this task, Atherton wrote Smith's bank and informed it of his belief, that under the law of

commercial paper it had no right to stop payment on the $30,000.00 check, once the check had been delivered. He further stated his belief that by issuing the cashier's check, the bank accepted Smith's promise to pay the $30,000.00 and converted that promise to its own obligation. If it stopped payment on the check, this obligation would be breached and the bank would consequently expose itself to liability.

Atherton then engaged in negotiations with Smith and her attorney to work out some settlement in regard to the dispute over the earnest money. Admittedly, these negotiations included a series of statements and threats of litigation promulgated by Atherton. However, such comments usually do not rise to the level of malice required, before one can successfully assert a cause of action against an opposing attorney.

We also note that Smith's allegation, that Lembke and Atherton "brought significant pressure to bear upon Mrs. Barrett to engage in a controversy against the Plaintiff," was denied by Barrett. Her deposition contains the following exchange with Mr. Atherton:

> Q: . . . Mrs. Barrett, at any time did I ever, ever bring any pressure at all against you to litigate or to engage in some sort of controversy against the Plaintiff?
>
> A: No, you never did.

This exchange further supports our conclusion that neither Atherton nor Lembke acted with any malice or improper purpose towards Mrs. Smith. There is no other evidence except allegations

8

and therefore Mrs. Smith has failed to come forward with facts to meet her burden of proof and we hold that summary judgment was proper on the issue of whether the defendants committed the tort of malicious defense.

Smith's second theory of recovery, alleging that Lembke and Atherton wrongfully and intentionally interfered with her business relations fails for the same reasons. In order to establish a prima facie case of such interference, one must show that the acts were:

(1)   intentional and wilful

(2)   calculated to cause damage to the Plaintiff in her business

(3)   were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and

(4)   that actual damages and loss resulted.

Peterson v. J.R. Simplot Co., (1989), 46 St.Rep. 1463, 1469, 778 P.2d 879, 884.

As we stated above, the evidence, taken as a whole, indicates that Atherton and Lembke were merely attempting to obtain the earnest money as liquidated damages on behalf of their client. These damages were provided for under the contract and therefore, their belief in their client's entitlement to the funds had a legal basis. There is no evidence that their actions were done with an "unlawful purpose" or were "calculated to cause damage" to Smith. Accordingly, this allegation also fails and we hold that summary

9

judgment on this issue was proper.

## II

The lower court found that the claims asserted by Mrs. Smith and her attorney, Mr. Donahoe, were frivolous. Acting on this belief, the district judge assessed sanctions against them in the amount of $2,658.10. Smith and her attorney argue these sanctions were improperly imposed. We agree.

Sanctions are properly awarded if an attorney fails to abide by the mandate of Rule 11, M.R.Civ.P., which states in pertinent part:

> ". . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading . . . that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading . . . is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or paper, including a reasonable attorney's fee."

The cause of action asserted in this case, although unsuccessful, was not totally frivolous, nor is there any evidence that it was interposed for any improper purpose. Mrs. Smith and Mr. Donahoe brought this case upon the belief that Mr. Atherton and Mr. Lembke improperly tied up Barrett's $30,000.00 down payment.

10

The complaint stated that this action resulted in severe financial hardship upon his client. Mr. Donohoe therefore felt that the cause of action was well grounded in fact and supported by the law or supported by a good faith argument in support of extending the law.

We have stated our disagreement with plaintiff's and Donahoe's position. However, we do find the actions undertaken by Atherton and Lembke had the effect of protraction. In light of these conclusions, we hold that the sanctions were improperly awarded and we reverse and vacate this portion of the judgment.

Affirmed in part and reversed in part.

_____
R.C. McDonough
Justice

We Concur:

_____
J.A. Turnage
Chief Justice

_____
Diane G. Barz

_____
John Conway Harrison

_____

_____
Justices

11