No. 94-377

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DONALD JARVENPAA,

      Plaintiff and Appellant,

  v.

GLACIER ELECTRIC COOPERATIVE, INC.,

      Defendant and Respondent.

FILED

JUL 11 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Robert P. Goff and Jean E. Faure, Church, Harris,
          Johnson and Williams, Great Falls, Montana

      For Respondent:

          Gary R. Christiansen, Warden, Christiansen,
          Johnson & Berg, Kalispell, Montana

Submitted on Briefs:  December 6, 1994

Decided:  July 11, 1995

Filed:

—Clerk

Honorable Dorothy McCarter, District Judge, delivered the Opinion of the Court.

The plaintiff, Donald Jarvenpaa, brought this action alleging that he was wrongfully discharged by defendant Glacier Electric Cooperative, Inc. (Glacier). Glacier moved for summary judgment, which was granted by the District Court for the Ninth Judicial District, Glacier County. Jarvenpaa appeals from this order. We reverse and remand.

Jarvenpaa began working for Glacier in 1962 and was Manager of Operations at the time of the alleged discharge. On September 29, 1992, Jarvenpaa's supervisor advised him that his employment would be terminated on December 31, 1992, because of problems with his job performance. Jarvenpaa was also informed that he could choose to retire prior to being dismissed and could accept a "Special Early Retirement Package" (SERP) which was being offered to five eligible employees. David Chapman, General Manager of the Board of Trustees, stated in a letter to Jarvenpaa dated November 2, 1992, "[Y]ou are being offered two options--retire under SERP or be terminated December 31, 1992. I have not made, and do not herein make any offer to negotiate further." Jarvenpaa responded on November 10, 1992, that he did not believe that Glacier had any basis to terminate his thirty-year employment, but "in view of your ultimatum that if I do not accept the offer of early retirement I will be terminated, I obviously have no alternative in this matter. Accordingly, with reluctance, I accept the offer to retire under SERP as set forth in your letter of November 2, 1992."

Jarvenpaa subsequently filed this suit for wrongful discharge. The District Court granted Glacier's motion for summary judgment. Although the court concluded that retirement can be a form of discharge under § 39-2-903(2), MCA, it found that, in this case, retirement was not a discharge because the employee signed an acknowledgement that his retirement was voluntary, and he accepted the benefits of the retirement package; he could have waited to be fired and then file an action for wrongful discharge. The court also concluded that the "retire or be fired" ultimatum was not a constructive discharge under § 39-2-903(1), MCA, because the choice between discharge and retirement cannot be said to be so intolerable that voluntary termination, in this case retirement, is the only reasonable alternative.

Our standard of review from a grant of summary judgment is the same as that of the district court under Rule 56(c), M.R.Civ.P. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. However, summary judgment is not a substitute for a trial on the merits. Morton v. M-W-M, Inc. (1994), 263 Mont. 245, 249, 868 P.2d 576, 578-79.

All reasonable inferences must be drawn in favor of the party opposing the motion. In making its determination, the court must consider the entire record. Smith v. Barrett (1990), 242 Mont. 37, 40, 788 P.2d 324, 326.

3

Summary judgment motions, however, clearly are not favored. "[T]he procedure is never to be a substitute for trial if a factual controversy exists." Reaves v. Reinbold (1980), 189 Mont. 284, 288, 615 P.2d 896, 898. If there is any doubt as to the propriety of a motion for summary judgment, it should be denied. Rogers v. Swingley (1983), 206 Mont. 306, 312, 670 P.2d 1386, 1389; Cheyenne Western Bank v. Young (1978), 179 Mont. 492, 496, 587 P.2d 401, 404.

The primary issue in this case, simply stated, is whether an employee, presented with a choice between being fired or accepting an early retirement package, has been "discharged" for purposes of bringing an action under Montana's Wrongful Discharge From Employment Act.

Montana has chosen to protect the rights of a worker to challenge the validity of an employer's decision to terminate his or her employment. While Montana law still provides that, absent provisions to the contrary, employment is "at will," under the Wrongful Discharge From Employment Act, an employer in most cases must have good cause to fire an employee. "Good cause" is defined in the Act as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reasons." Section 39-2-903(5), MCA.

In most cases the situation presented is one where the employment was actually terminated by the employer. The Wrongful

4

Discharge From Employment Act, however, also allows for those situations in which the employer has made working conditions so intolerable that the employee is forced to quit--i.e., a constructive discharge. Under the Act, this type of situation is no less wrongful than an actual firing. Constructive discharge is defined in the Act as "the voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative." Section 39-2-903(1), MCA. This definition is essentially the same as we defined constructive discharge in our pre-Act cases. Kestell v. Heritage Health Care Corp. (1993), 259 Mont. 518, 524, 858 P.2d 3, 6-7. We have held that in determining "whether an employee has been constructively discharged, the fact finder must decide whether the employer has rendered working conditions so intolerable that resignation is the only reasonable alternative." Kestell, 858 P.2d at 7. This determination must be based on the totality of the circumstances, not on the employee's subjective judgment that working conditions are intolerable.

In the case before us, the termination was initiated by the employer when it issued its ultimatum to the employee that he would be fired if he did not accept the retirement package. The employer's statements to this effect were clear and unequivocal. Other courts have held that where an employer tells an employee to resign or be fired, the resignation can be a constructive dis-

5

charge.    Sheets v. Knight (Or. 1989), 779 P.2d 1000; Cameron v. Beard (Alaska 1993), 864 P.2d 538.    See also Dept. of Air Force v. Dept. of Emp. Sec. (Utah App. 1990), 786 P.2d 1361, 1365 (where employee resigned in the face of inevitable discharge, the termination was initiated by the employer and was not a voluntary termination)

In Gates v. Life of Montana Ins. Co. (1982), 196 Mont. 178, 638 P.2d 1063, appeal after remand 205 Mont. 304, 668 P.2d 213 (1983), a pre-Act case, the employer asserted that the employee voluntarily resigned, but the employee argued that she signed a letter of resignation under duress when she was given the option of resigning or being fired.    We noted that the threshold factual issue of whether the employee's termination was voluntary or involuntary should be submitted to the factfinder.  Gates, 638 P.2d at 1066.    However, we have not yet been presented with a situation in which an employee, such as Jarvenpaa, is given a "retire or be fired" choice and chooses the alternative of accepting early retirement rather than the alternative of being fired.

Discussions of when an offer of early retirement actually amounts to a discharge occur most frequently in age discrimination cases.    While the elements of an age discrimination claim differ from those in the case before us, the issues involved in determining whether this was in fact a forced termination or a voluntary retirement are substantially the same.  Therefore we look to those cases for guidance.

An offer of early retirement does not by itself constitute constructive discharge. Early retirement often provides a beneficial way for older employees to leave the work place

> [M]ost courts have found that an offer of early retirement constitutes a constructive discharge only when the offer is made under terms and conditions where the employee would be worse off whether or not he or she accepted the offer. More simply stated, an offer of early retirement constitutes a constructive discharge when the choice is essentially either early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits.

Smith v. World Ins. Co. (8th Cir. 1994), 38 F.3d 1456, 1461 (citations omitted).

Early retirement is not a discharge if the employee has the power to choose to keep working.

> Absent the right to decline an employer's offer of early retirement and keep working under lawful conditions, the "decision" to take the early retirement "option" is no decision at all. A "choice" between not working with benefits and not working without benefits amounts to, in effect, compulsory retirement.

Hebert v. Mohawk Rubber Co. (1st Cir. 1989), 872 F.2d 1104, 1113. Without this option to choose to keep working, "an employer's offer of a choice between early retirement with benefits or discharge without benefits is nothing other than a discharge." Hebert, 872 F.2d at 1113. In reaching this holding, the First Circuit considered and rejected the reasoning of the Sixth Circuit in Ackerman v. Diamond Shamrock Corp. (6th Cir. 1982), 670 F.2d 66.

The standard for determining when a constructive discharge has occurred is virtually the same as that found in the Wrongful Discharge From Employment Act.

7

> [T]he law regards as the functional equivalent of a discharge those offers of early retirement which, if refused, will result in work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than submit to looming indignities.

Vega v. Kodak Caribbean, Ltd. (1st Cir. 1993), 3 F.3d 476, 480. In applying this standard to an offer of early retirement,

> a plaintiff who has accepted an employer's offer to retire can be said to have been constructively discharged when the offer presented was, at rock bottom, "a choice between early retirement with benefits or discharge without benefits," or, more starkly still, an "impermissible take-it-or-leave-it choice between retirement or discharge."

Vega, 3 F.3d at 480.

In the case before us, the Board of Trustees voted on September 28, 1992, to offer the SERP to all five eligible employees. One day later, Jarvenpaa was informed that he would be fired if he did not accept the retirement package. He was specifically threatened with loss of health insurance benefits if he waited to be fired. From these facts, a reasonable jury could conclude that Jarvenpaa was in fact forced to retire and that his termination was not voluntary. A statement by an employer that the employee might be discharged, with a consequent loss of benefits, creates a contested issue of material fact regarding constructive discharge even if the employee accepts an early retirement offer; a reasonable person, faced with a loss of benefits if he waits to be discharged rather than accept retirement, might well feel compelled to resign. Downey v. Southern Natural Gas Co. (5th Cir. 1981), 649 F.2d 302, 305.

8

The employer makes much of the fact that Jarvenpaa's lump sum benefit under the SERP was considerably greater than his entitlement if he were terminated. However, there is no indication in the record that Jarvenpaa was offered any greater benefits than any of the other employees eligible for the SERP. Furthermore, these benefits were substantially less than Jarvenpaa asserts he would have received if he had been allowed to continue working until his normal retirement, a choice which he did not have.

The problem with the employer's argument is the same as that encountered in age discrimination cases; it would permit an employer to escape the consequences of age discrimination or, in this case, alleged wrongful discharge, by presenting an employee with a Hobson's choice of being fired or of taking the retirement package offered. The employer can thus rid itself of what it perceives to be a problem employee without having to account for its action. While the amount of the retirement benefit which he received is relevant to the amount of damages due to Jarvenpaa if he succeeds in this lawsuit, it is not determinative of whether his termination was voluntary or not. "The fact that [the employee], when confronted with the retire-or-be-fired choice, bargained for all that he could get in the way of benefits simply does not change the fact that this was, at bottom, a forced retirement, not a voluntary one." Hebert, 872 F.2d at 1113.

One point that needs to be kept in mind is that we do not decide here whether Jarvenpaa will prevail on his wrongful

discharge claim. We do not decide whether Glacier's actions to terminate him were wrongful. That is for the trier of fact to decide. What we do decide here is that the circumstances in this case constitute a discharge, rather than a voluntary termination of employment, and therefore Jarvenpaa's case is sufficient to survive a motion for summary judgment.

We reverse the District Court's grant of summary judgment and remand for proceedings consistent with this Opinion.

_____
Hon. Dorothy McCarter, District
Judge, sitting in place of
Justice James C. Nelson


We concur:


_____
Chief Justice

_____

_____
Justices


_____
Hon. Ted L. Mizner, District
Judge, sitting in place of
Retired Justice John C.
Harrison

**10**

Justice Fred J. Weber dissents as follows:

The opinion states the primary issue in this case as follows:

> The primary issue in this case, simply stated, is whether an employee, presented with a choice between being fired or accepting an early retirement package, has been "discharged" for purposes of bringing an action under Montana's Wrongful Termination Act.

In its summary judgment, the District Court speaking to that same issue stated:

> Choosing to accept the available retirement option was the same as entering into an employment contract or settling a lawsuit, which is another form of agreement. Jarvenpaa agreed that he would retire and accept the benefits and detriments of doing so. Thus, while he may have been discharged, such discharge could not be unlawful.

Prior to discussing the merits of the holding of the opinion in this case as compared to the District Court, I believe it is essential to more fully set forth the basis on the part of the District Court for its decision on summary judgment. Following are pertinent portions of that Order:

> The undisputed facts of this case are as follows: Sometime prior to October 23, 1992, plaintiff Donald Jarvenpaa's supervisor told him he, Jarvenpaa, would be terminated on December 31, 1992. <u>In the alternative, Glacier offered Jarvenpaa the opportunity to take early retirement which would provide Jarvenpaa with over $100,000 in retirement benefits (beyond what he would receive if discharged)</u> and would allow him to continue to participate in Glacier's health care plan. Jarvenpaa chose to retire and took a retirement package of over $300,000, plus continued coverage under Glacier's health care plan. This retirement package was available to other qualified employees of Glacier.
> Jarvenpaa clams that his choice to retire was a "Hobson's choice," no choice at all, and that he was coerced into resigning.
> Glacier claims that Jarvenpaa's choice to accept early retirement precludes any possibility of a finding that Jarvenpaa was discharged.

11

The definition of the term "discharge" includes resignation. § 39-2-903(2), Mont. Code Ann. (1991). It does not specifically include retirement. However, as retirement is a form of termination of employment it appears to be included in the statutory definition of discharge.

On January 14, 1993, Jarvenwaa signed an EMPLOYEE'S ELECTION TO ACCEPT SPECIAL EARLY RETIREMENT WINDOW which states that Jarvenwaa's choice to accept the early retirement was "voluntary and . . made of [Jarvenpaa's] own free will."

Jarvenwaa accepted the benefits of early retirement. Glacier paid Jarvenwaa over $100,000 for his election to retire. Also, Jarvenpaa was allowed to continue to participate in Glacier's employee health care plan (with premiums paid by Jarvenpaa.)

Jarvenpaa's signed acknowledgement that his retirement was voluntary and his acceptance of the benefits provided under the early retirement agreement precludes Jarvenwaa as a matter of law from recovery under Title 39, Chapter 2, part 9, Mont. Code Ann.

(Emphasis supplied.)

While not specifically quoted by the District Court in its Order, it is undisputed that the plaintiff and his wife signed the Employee's Election to Accept Special Early Retirement Window which is attached to plaintiff's deposition as Exhibit H and which in pertinent part states:

The undersigned employee of Glacier Electric Cooperative, Inc. (the "Cooperative"), and his/her spouse, acknowledge that they have been presented with a copy of the Board Resolution that makes available a Special Early Retirement Window (the "Retirement Window") for certain employees of the Cooperative, and that they have had a full explanation of the Retirement Window, and opportunity to ask all questions concerning it that they wish to ask.

The undersigned employee and his/her spouse acknowledge that during the window period of 3 months, they have had ample time to examine the provisions of the Retirement Window and consult with anyone they wish. The undersigned parties understand that the employee's election under the Retirement Window is voluntary and state that this election is made of the employee's own free will.

The undersigned employee hereby elects to participate in the Retirement Window. .

12

The undersigned spouse of the undersigned employee states that he/she agrees with the election of the employee under the Retirement Window.

I conclude that the following undisputed facts which are contained in plaintiff's deposition are also relevant on this issue:

(Questioning by defense counsel)

Q: . . . Now, as I understand it, and we know from the record that you elected the Special Early Retirement Program, my understanding is you took the lump sum option under that program and received money in a lump sum; is that correct?

A: That's correct.

Q: And if I understand the payments that you received, you basically got $302,000 as a lump sum under the special program, you got 15,700 and some dollars for contributions that you had made into the program, and you also received 25,000 and almost $900 for accrued vacation and leave and so forth. Is that accurate?

A: Sounds close.

Q: Can you think of any checks I missed out on?

A: Not offhand, no.

Q: Okay.

A: YOU got, what did you say, 302?

Q: I got 302.

A: Plus 157

Q: Plus 15, plus 25

A: Okay. Pretty close, I guess

An important fact to keep in mind is that, as a part of this Early Retirement, the plaintiff received something over $340,000 in cash, and after receipt of that, he then commenced the present lawsuit.

It is also important to keep in mind one of the facts which was considered and referred to by the District Court. The special retirement accepted by the plaintiff required the expenditure of over $100,000 additional funds by defendant. Again, this is demonstrated in plaintiff's deposition where he stated as follows:

Q: All right, now, what I want to ask you is, do you know how much it cost the co-op to buy you that special retirement program that you have taken the money from?

A: I have no idea.

Q: Okay. Well, I think that there's some correspondence in here, maybe the November 2 letter, I'm not sure, but are you aware the co-op paid about $106,000 to get you eligible for that Special Early Retirement Program? Does that number mean anything to you?

A: No.

Q: Hundred thousand sound like a ball park figure?

A: Well, are you saying if I was terminated -- I know if I was terminated, I'd get 200 according to that letter there, and if I didn't, I would get 300.

Q: So you got really $100,000 more as part of your lump sum because you took the special retirement; right?

A: Right.

Q: All right. Now, what I don't understand is why are you saying you were actually discharged when you elected the special --

A: I only had one option or the other.

Q: I understand that

A: Okay.

Q: Now, if you lose this lawsuit, are you prepared to pay back to the co-op the hundred and some thousand dollars 'chat they have paid to give you the special retirement program that you took?

A: Do you think I should?

Q:    I'm asking you.

A:    No, I wouldn't.

Q:    Why not?

A:    Well, why would I?

Q:    Why not?

A:    I don't feel that I should

We emphasize that the extra $100,000 is clearly consideration for early retirement paid by the defendant Glacier Electric to the plaintiff.

In its Order the District Court pointed out that plaintiff was not compelled to retire in the form that he did and was free to remain employed until discharged when he would receive substantial benefits, although less than he received by retiring, and seek compensation for the discharge in a lawsuit. The District Court stated:

> Jarvenpaa was free to remain employed until discharged and then seek compensation for the discharge if he believed it to be without good cause. He would have received all he was entitled to and if he was successful in his lawsuit he would have received damages. Instead, Jarvenpaa chose to accept early retirement and the benefits appurtenant thereto. He did have a choice. The retirement was available to him, and others, and it did not entail the risk that he would be unsuccessful in a lawsuit alleging an unlawful discharge.

This properly emphasizes the distinction between this case and several of the cases cited in the opinion here. This was not a case in which a plaintiff was required to resign or he would receive no benefits.

By accepting early retirement, the plaintiff required that the defendant spend over $100,000 of additional funds to purchase the

15

retirement benefits which he has now received. The analysis of the District Court on this aspect was directly on point when the District Court stated:

> Choosing to accept the available retirement option was the same as entering into an employment contract or settling a lawsuit, which is another form of agreement. Jarvenpaa agreed that he would retire and accept the benefits and detriments of doing so. Thus, while he may have been discharged, such discharge could not be unlawful.

This is a key aspect of this case. This is directly comparable to the settling of a lawsuit by agreement which includes the payment of substantial monies to the settling plaintiff.

The opinion points out that in most cases the situation presented is one where the employment was actually terminated by the employer, which of course does not apply here. The opinion then points out that the Wrongful Discharge Act covers those situations where the employer has made working conditions so intolerable that the employee is forced to quit--a constructive discharge. I disagree with the analysis because I find no basis to conclude there was something which could be called a constructive discharge. I agree with the analysis of the District Court which stated:

> Glacier's notice that if he chose not to retire, Jarvenpaa would be terminated for what Glacier considered good cause but Jarvenpaa did not, does not constitute a constructive discharge.
>
> "'Constructive discharge' means the voluntary termination of employment by a employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the

16

only reasonable alternative." § 39-2-903 (1),
Mont. Code Ann. (1991).

The choice between discharge and retirement cannot
be said to be "so intolerable that voluntary termination
[or retirement] is the only reasonable alternative."

The Court concludes that Jarvenpaa voluntarily
retired. Accordingly, his claim for wrongful discharge
must fail.

Certainly the constructive discharge statute does not apply to this type of a situation as there is an absence of a situation which was so intolerable that voluntary termination was the only reasonable alterative. That analysis is just not applicable here.

I agree with the holding of the District Court that plaintiff Jarvenpaa voluntarily retired and therefore his claim for wrongful discharge fails.

I have emphasized the facts in this case because such facts do not warrant the technical legal application or analysis which is applied in the opinion. The uncontradicted facts as established primarily through the deposition testimony of plaintiff Jarvenpaa, establish that there were numerous and clear grounds, as viewed by the employer, to discharge Jarvenpaa. Those conditions were viewed by the employer as being so intolerable as to require his discharge. In its analysis, the employer took into consideration the approximate 30 years of employment by plaintiff Jarvenpaa and concluded it was fair to allow him to retire under the Special Early Retirement package, even though that required an additional expenditure of over $100,000 on the part of the employer. At a time when plaintiff was represented by counsel, he executed his

17

Employee's Election to Accept in which he specifically stated as follows :

> The undersigned parties understand that the employee's election under the Retirement Window is voluntary and state that this election is made of the employee's own free will.

This is not a case in which the employee was forced to sign this without benefit of counsel. All of the exhibits to which reference has been made were furnished by the defendant Glacier Electric to plaintiff's counsel and were considered by that counsel who in turn prepared various of the papers submitted by the plaintiff employee. I agree with the analysis of the District Court which concluded that Jarvenpaa agreed (with the advice of his own counsel) that he would retire and accept the benefits and detriments of doing so. Under that circumstance it is unjust to allow the present action to continue.

I would point out that the opinion must be construed by the employer as setting a precedent which tells the employer that it made a mistake when it put up an additional $100,000 plus in order to buy a retirement program and its peace--it should just have said we have an adequate basis to discharge and then do so--making such a discharge we will not consider the number of years of employment or any positive factors in the employee's favor. The opinion has the effect of inviting extended litigation in connection with the various early retirement plans which have been recently used throughout Montana, and even by the State government itself.

_____
                 Justice

18

Chief Justice J.A. Turnage and District Judge Ted L. Mimer (sitting for Justice W. William Leaphart) concur in the foregoing dissent.

_____
Chief Justice

_____
Judge Mizner

19